[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-11034
Non-Argument Calendar

_____

D. C. Docket No. 06-21952-CV-ASG

STEPHAN JAY LAWRENCE,

Plaintiff-Appellant,

versus

ALAN L. GOLDBERG,
CRISIS MANAGEMENT, INC.,
BERGER SINGERMAN, P.A.,
PAUL S. SINGERMAN,
JAMES H. FIERBERT,
PAUL AVRON,
MELAND RUSSIN & BUDWICK, P.A.,
MICHAEL BUDWICK, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 10, 2009)

Before DUBINA, Chief Judge, CARNES and WILSON, Circuit Judges.

DUBINA, Chief Judge:

Appellant Stephan Jay Lawrence, appearing *pro se*, appeals the district court's dismissal of his civil suit for lack of subject matter jurisdiction under *Barton v. Barbour*, 104 U.S. 126 (1881) ("the *Barton* doctrine"). For the reasons that follow, we affirm.

## I. BACKGROUND

The present appeal arises out of events occurring in connection with Lawrence's ongoing Chapter 7 bankruptcy proceeding, which has been the subject of litigation before the bankruptcy court in the Southern District of Florida since 1997.

Lawrence, an options trader, incurred a large margin default debt with the investment firm Bear Stearns & Co., Inc. ("Bear Stearns"). An arbitrator entered an award of $20.4 million against Lawrence in favor of Bear Stearns. Bear Stearns confirmed this arbitration award in the Southern District of New York and then registered the New York judgment in the Southern District of Florida. Because Lawrence admitted that he had placed $7 million of his assets in an offshore spendthrift trust ("the Mauritian trust"), the district court in Bear Stearns's suit to enforce the $20.4 million judgment granted Bear Stearns leave to implead a trust

2

representative. Lawrence responded in June 1997 by voluntarily filing for bankruptcy. Thereafter, all collection efforts were pursued under the aegis of the Chapter 7 trustee for Lawrence's estate, Alan L. Goldberg ("the Trustee").

The bankruptcy proceeding has been contentious. Lawrence unsuccessfully sought to have the Trustee's counsel disqualified. In addition, Lawrence represented that although he initially reserved authority to appoint trustees and designate himself as a beneficiary of the Mauritian trust, a March 1995 amendment to the trust labeled him an "excluded person," depriving him of any beneficial interest in, control over, or knowledge of, the trust's assets or activities. The Trustee disputed Lawrence's characterization of the effect of the 1995 amendment to the Mauritian trust and argued that the Mauritian trust's assets belonged in Lawrence's bankruptcy estate.

Because the bankruptcy court concluded that Lawrence's failure to respond to discovery requests concerning the Mauritian trust was willful and in bad faith, the bankruptcy court entered a default judgment against Lawrence, finding that the Mauritian trust was property of the estate. In July 1999, the Trustee sought an order directing Lawrence to turn over the assets of the Mauritian trust ("the Turn Over Order"), which the bankruptcy court granted.

At a status conference convened to determine Lawrence's compliance with

the Turn Over Order, the bankruptcy court rejected Lawrence's impossibility defense and found that Lawrence controlled the Mauritian trust through his retained powers to remove and appoint trustees and to add and exclude beneficiaries. The bankruptcy court issued a contempt order against Lawrence for failing to turn over the assets of the Mauritian trust, fining Lawrence at the rate of $10,000 per day if he did not comply.

In October 1999, after Lawrence's continued failure to comply with the Turn Over Order and the related contempt order, the bankruptcy court ordered Lawrence incarcerated pending compliance. In July 2000, the district court affirmed both the Turn Over Order and the contempt order, and Lawrence was incarcerated in September 2000. This court affirmed the district court's rulings on the Turn Over Order and the contempt order. *Lawrence v. Goldberg* (*In re Lawrence*), 279 F.3d 1294, 1296 (11th Cir. 2002).

Seeking release from prison, Lawrence filed a petition for mandamus or prohibition in March 2004. The district court denied Lawrence's petition, and this court affirmed. *Lawrence v. U.S. Bankruptcy Court*, 153 Fed. Appx. 552, 553 (11th Cir. 2005) (unpublished). Despite the district court's order prohibiting Lawrence from making further filings with the district court, Lawrence's bankruptcy proceeding remained pending. *Id.* at 554.

4

Lawrence filed the instant 18-count amended complaint in August 2006, alleging, *inter alia*, that the Trustee and a group of creditors conspired to enforce the Turn Over Order and to gain a litigation advantage by: wrongfully obtaining orders authorizing the filing of sealed *ex parte* pleadings, hiring private investigators, holding *in camera* discovery hearings, and obtaining Lawrence's tape-recorded telephone conversations from prison. Lawrence alleged that such conduct violated federal wiretapping law, 18 U.S.C. §§ 2510-2522, 2701(a), 2702(a), 2703 and 2707(g); the Racketeer-Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d(1), 1692e(10) and 1692f; federal and constitutional rights under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999 (1971); and Florida state laws.

Lawrence named twelve "Trustee" defendants: the Trustee; Crisis Management, Inc. ("CM"), the Trustee's consulting firm;[1] Berger Singerman, P.A. ("Berger"), a law firm that represented the Trustee; Paul S. Singerman, a Berger partner; James H. Fierberg, a Berger attorney who allegedly filed a false affidavit; Paul Avron, a Berger attorney who presented arguments to the bankruptcy court;

---

[1] While Lawrence lists CM as a party in the statement of facts in his appellate brief, he does not challenge the district court's dismissal of CM in his arguments to this court. Accordingly, he has waived any claim in this respect. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) (holding that claims not raised in an initial brief on appeal are deemed waived).

Michael Budwick, the Trustee's special counsel; Budwick's law firm, Meland Russin & Budwick, P.A. ("MRB"); Edward Tillinghast III, an attorney with the Coudert Brothers law firm; the Coudert Brothers law firm;[2] Interfor, Inc., an investigative services firm; and Juval Aviv, an investigator and Interfor's owner.

Lawrence also named seven "Creditor" defendants: Bear Stearns; Daniel Taub, a Bear Stearns managing director; Mark Lehman, a Bear Stearns managing director; Mark Cohen, a creditors' attorney; Mark D. Cohen, P.A., Cohen's law firm; Howard Kahn, a second creditors' attorney; and Kahn, Zuckerman, P.A.[3]

The district court dismissed Lawrence's amended complaint in its entirety for lack of subject matter jurisdiction under *Barton v. Barbour*, 104 U.S. 126 (1881). Lawrence then perfected this appeal.[4]

## II. DISCUSSION

"We review a dismissal for lack of subject matter jurisdiction *de novo*." *Carter v. Rodgers*, 220 F.3d 1249, 1252 n.3 (11th Cir. 2000).

The district court dismissed Lawrence's complaint on the basis of the *Barton*

---

[2] Lawrence dismissed his claims against the Coudert Brothers law firm after it declared bankruptcy.

[3] Kahn, Zuckerman, P.A. is not an existing law firm.

[4] Although Lawrence challenges the district court's order denying his post-dismissal motion to quash judicial notice with regard to the district court's alternative dismissal of his amended complaint under Federal Rule of Civil Procedure 12(b)(6), it is not necessary for us to resolve the validity of that order in light of our disposition of this appeal on other grounds.

doctrine. In *Barton*, a court in equity had appointed a receiver "of all the property, rights, and franchises" of a railroad company. *Barton*, 104 U.S. at 126–27. While the receiver was operating the railroad, one of the company's train cars derailed, and a passenger sustained personal injuries. *Id.* at 127. The injured passenger attempted to sue the receiver without obtaining the leave of the court that had appointed the receiver. *Id.* The Supreme Court reasoned that allowing the plaintiff's action to proceed without leave of the appointing court would have been "an usurpation of the powers and duties which belonged exclusively to [the appointing] court." *Id.* at 136. Therefore, the Supreme Court held that a court does not have "jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action . . . based on his negligence or that of his servants in the performance of their duty in respect of [the property administered by the receiver]." *Id.* at 137.

In 2000, we held—in our only published case interpreting the *Barton* doctrine—that, as a matter of federal common law, "a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." *Carter*, 220 F.3d at 1252. We also held that the *Barton* doctrine applies to actions against officers approved by the bankruptcy court when

7

those officers function "as the equivalent of court appointed officers." *Id.* at 1252

n.4; *cf. Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir.

2006) (holding that the *Barton* Doctrine "applies to trustees' counsel as well as to

trustees themselves"). In *Carter*, we explained that the *Barton* doctrine helps to

ensure the proper functioning of the bankruptcy process:

> If [the trustee] is burdened with having to defend against suits by
> litigants disappointed by his actions on the court's behalf, his work for
> the court will be impeded. . . . Without the requirement [of leave],
> trusteeship will become a more irksome duty, and so it will be harder
> for courts to find competent people to appoint as trustees. Trustees
> will have to pay higher malpractice premiums, and this will make the
> administration of the bankruptcy laws more expensive. . . .
> Furthermore, requiring that leave to sue be sought enables bankruptcy
> judges to monitor the work of the trustees more effectively.

*Carter*, 220 F.3d at 1252–53 (alteration in original) (quoting *In re Linton*, 136 F.3d

544, 545 (7th Cir. 1998)).

Lawrence argues that the district court should not have applied the *Barton*

doctrine to all of the defendants in his civil suit. We disagree. It is undisputed that

Lawrence did not obtain leave of the bankruptcy court before filing his amended

complaint in the district court. The Trustee was appointed by the bankruptcy court,

and the Trustee's court-approved counsel—the Berger firm and attorneys

Singerman, Berger, Fierberg, and Avron; the MRB firm and attorney Budwick; and

attorney Tillinghast of the Coudert Brothers firm—functioned as the equivalent of

8

court-appointed officers by helping the Trustee execute his official duties. While Lawrence claims that the Trustee, through counsel, abused his official position, he concedes that the Trustee ostensibly undertook the challenged actions in his official capacity and for the purpose of enforcing the bankruptcy court's Turn Over Order. *See* 11 U.S.C. § 704(a)(1) (The Trustee has a duty to "collect and reduce to money the property of the estate."). The bankruptcy court also approved the Trustee's hiring of investigator Aviv and his company Interfor, Inc. to help him discharge his duty to locate assets belonging to the bankruptcy estate. Thus, Aviv and Interfor, Inc. also functioned as the equivalent of court appointed officers, and Lawrence's claims that they violated the terms of their retainers concerned actions taken in their official capacities.

With regard to the creditor defendants, the bankruptcy court approved a financing arrangement in which the creditors—namely Bear Stearns, acting through managing partners Taub and Lehman—would advance the costs necessary to recover property of the estate and would receive repayment from recovered assets, if any. Thus, to the extent the creditors financed the Trustee's efforts to locate hidden assets on behalf of the estate, they likewise functioned as the equivalent of court appointed officers, as did their counsel. By alleging that the creditors, through counsel, hired professionals for their own benefit but billed their

9

fees to the estate, Lawrence essentially claimed that they breached their official

fiduciary duties to the Trustee and the bankruptcy court.

Lawrence next contends that the *Barton* doctrine does not apply because his

civil suit is unrelated to his bankruptcy proceeding.[5] We disagree. Bankruptcy

courts have jurisdiction to hear "any or all cases under title 11 and any or all

proceedings arising under title 11 or arising in or related to a case under title 11,"

upon referral by a district court. 28 U.S.C. § 157(a) (2006). "'Arising under'

proceedings are matters invoking a substantive right created by the Bankruptcy

Code. The 'arising in a case under' category is generally thought to involve

administrative-type matters . . . ." *Cont'l Nat'l Bank of Miami v. Sanchez* (*In re

Toledo*), 170 F.3d 1340, 1345 (11th Cir. 1999) (citations omitted). We have

adopted the following guidelines for determining whether a civil proceeding is

"related to" a bankruptcy proceeding:

> The . . . test for determining whether a civil proceeding is related to
> bankruptcy is whether the outcome of the proceeding could conceivably
> have an effect on the estate being administered in bankruptcy. The
> proceeding need not necessarily be against the debtor or against the debtor's
> property. An action is related to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or freedom of action (either positively or

---

[5] In *Carter*, we left open the question "whether leave of the bankruptcy court is required when a debtor sues a trustee [or other bankruptcy-court-approved officer] for a tort completely 'unrelated to' and 'outside the scope' of the bankruptcy proceeding." *Carter*, 220 F.3d at 1253. Because we conclude that Lawrence's civil claims are related to his bankruptcy proceeding, we need not answer the question left open in *Carter*.

10

negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Miller v. Kemira, Inc.* (*In re Lemco Gypsum, Inc.*), 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Although Lawrence raises claims under a variety of state and federal laws, the essence of Lawrence's complaint is that the Trustee and the other defendants colluded to enforce the Turn Over Order, an order of the bankruptcy court, and otherwise unlawfully attempted to bring assets into the bankruptcy estate. The outcome of Lawrence's civil suit clearly could have an effect on the handling and administration of his bankruptcy estate. All of Lawrence's civil claims fall within the scope of the *Barton* doctrine because they are "related to" his bankruptcy proceeding.

For the reasons set forth above, we affirm the district court's order dismissing Lawrence's amended complaint in its entirety.[6]

**AFFIRMED.**

_____

[6] Because of our disposition of this appeal, we decline to consider the parties' remaining arguments.