**David HILL, Plaintiff,**

v.

**Christopher (Chris) RE, Apto Solutions, Inc., Defendant.**

**CIVIL ACTION NO. 1:16–CV–03942–AT**

United States District Court, N.D. Georgia, Atlanta Division.

Signed May 1, 2017

position to the motion for summary judgment and responded to Rajsic's motion to strike.

David Louis Hill, II, Hill Innovative Law LLC, for Plaintiff.

Daniel D. Zegura, Cameron Blaine Roberts, Rogers & Hardin, LLP, for Defendants.

## ORDER

Amy Totenberg, United States District Judge

■ This matter is before the Court on Plaintiff David Hill's Motion to Remand [Doc. 8] and Defendants Apto Solutions, Inc. ("Apto") and Christopher Re's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 4]. Plaintiff originally brought this suit in the Magistrate Court of Fulton County, alleging tortious interference with a contractual relationship. Defendant Apto removed this case on the basis that Plaintiff's claim is related to and arises out of a bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b). Defendant also has moved to dismiss Plaintiff's claim pursuant to the *Barton* doctrine,[1] and Plaintiff has moved to remand this case to the Magistrate Court of Fulton County.

For the reasons stated below, the Court **GRANTS** Plaintiff's Motion to Remand [Doc. 8] and **DENIES** Defendant's Motion to Dismiss [Doc. 4].

## I. BACKGROUND

The events of this case began with the bankruptcy of the law firm of Morris, Schneider, Wittstadt, Va., PLLC in the Eastern District of Virginia. Non-party Auction Advisors, LLC ("Auction Advisors") was employed as the auctioneer of the bankruptcy estate of Morris, Schneid-

---

1. The *Barton* doctrine applies to claims filed by litigants in bankruptcy court and requires that a debtor must first obtain leave from the bankruptcy court before it can initiate an action in the district court against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity. *See Barton v. Barbour*, 104 U.S. 126, 137, 26 L.Ed. 672 (1881) (holding that a court does not have "jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action ... based on his negligence or that of his servants in the performance of their duty in respect of [the property administered by the receiver]."); *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000); *Lawrence v. Goldberg*, 573 F.3d at 1269.

er, Wittstadt, VA., PLLC ("Morris Schneider Wittstadt" or "Debtor") to provide marketing and auction services in connection with Debtor's "sale of furniture, fixtures, and equipment, including all office computers and electronics.'" (Pl.'s Reply Ex. B, Doc. 16–2, *In re Morris Schneider Wittstadt VA., PLLC*, No. 15–33370, Doc. 622 (Bankr. E.D. Va. Nov. 5, 2015). After Auction Advisors was employed to auction and sell Debtor's property, the bankruptcy court entered an order requiring the Debtor to "retain a reputable IT consultant with the requisite experience as a neutral digital or computer forensic examiner, to delete or destroy all of the data, including all of the Confidential Information" off of Morris, Schneider, Wittstadt's computers and electronics. (*Morris Schneider*, No. 15–33370, November 19, 2015 Order, Defs.' Mot. Dismiss Ex. A at 7, Doc. 4–2.)·

Defendant Apto Solutions, Inc. ("Apto") was hired pursuant to this bankruptcy court order in November 2015. (Declaration of Christopher Re ¶ 3, Defs.' Mot. Dismiss Ex. B; Doc. 4–3 (citing *Morris Schneider*, No. 15–33370, Doc. 933.) Defendant Christopher Re, Apto's Vice President of Business Development acted as Apto's Agent. (Declaration of Christopher Re, Defs.' Mot. Dismiss Ex. B ¶ 3; Compl. ¶ 11.)

Plaintiff David Hill, an attorney, alleges he purchased various items of office equipment out of the bankruptcy estate from Auction Advisors in November 2015, and subsequently entered into a contract with Auction Advisors to purchase copiers, computers, and computer equipment.

Plaintiff sued Defendants Re and Apto in the Magistrate Court of Fulton County, Georgia. (Notice of Removal Ex. A.) Plaintiff's Complaint alleged tortious interference with a contractual relationship against Defendants, claiming that Defendants interfered with Plaintiff's purported contract with Auction Advisors. (*Id.*)

Plaintiff alleges that an employee of Auction Advisors, Oren Klein, contacted Plaintiff's agent, Neil Landers, on January 28, 2016 and January 29, 2016 to discuss the sale of technology equipment—approximately 270 computers, 69 printers and fax machines, 53 network switches, 200 hard drives, 51 cell phones, 25 video cards, and 69 monitors ("technology equipment"). (Notice of Removal Ex. A.) Plaintiff wired $6,000.00 dollars to Klein on February 8, 2016 as consideration for the purchase of the technology equipment. (*Id.*) While Klein informed Plaintiff that "[they] had a deal," the sale was not yet (and was never) approved by the bankruptcy court. (*Id.*) In addition, on February 8, 2016, Klein informed Plaintiff that a court order permitting Defendants to erase data on the technology equipment was required, but Klein did not inform Plaintiff that the court order was a precondition to the sale.[2] (*Id.*)

Between February 8, 2016 and April 7, 2016 when the bankruptcy court "authorized but [did not] direct" the removal of the confidential information from the technology equipment, Landers, Klein, and Re exchanged a variety of emails and phone calls regarding the cost of erasing the confidential information from the harddrives negotiated for sale with Plaintiff. (Notice of Removal Ex. A; Defs.' Mot. to Dismiss Ex. D.) On March 15, 2016, Defendant Re stated that Plaintiff would have to pay a $10 charge per hard-drive to remove confidential information from each harddrive while keeping the hard-drive in the computer. (Notice of Removal Ex. A.)

---

2. On February 4, 2016, Debtor filed a motion with the bankruptcy court to destroy the confidential information located on the computer equipment being negotiated for sale to Plaintiff. *See Morris Schneider*, No. 15–33370 at Doc. 823.

Plaintiff agreed to this extra charge on this date. (*Id.*) On June 7, 2016, Defendant Re told Landers that he would begin wiping the hard-drives "after the sale [was] approved" by the bankruptcy court. (*Id.*) At this time, Defendant Re acknowledged that the "destruction" of the confidential information was "approved" by the bankruptcy court. (*Id.*)

On July 13, 2016, Plaintiff entered a signed contract with Ginstar Computers for the sale of 255 computers for a price of $12,820.00. (*Id.*) The computers negotiated in the Ginstar contract were those Plaintiff believed to have purchased from Auction Advisors. (*Id.*) Between July 13 and July 15, 2016, Defendant Re and Plaintiff's agent, Mr. Landers, again exchanged a series of communications surrounding a disagreement about the charge to erase the confidential information from the hard-drives. (*Id.*) It appears to the Court that the crux of this disagreement focused on whether Plaintiff would be responsible for either no charge, a $5 dollar charge, or a $10 dollar charge per hard-drive erased by Defendants, keeping the hard-drives in the computers, and not destroying the hard-drives in lieu of erasing them. (*Id.*) When Defendant Re insisted that Plaintiff continue to pay the $10 charge per hard-drive, Plaintiff acquiesced. (*Id.*) However, on July 15, 2016, Defendant Re informed Landers that, "together with the professionals in this case we have made the collective decision to shred the media and dispose of the assets through our standard process. The attorneys have instructed Auction Advis-

ors to return any money you currently have in Escrow." (*Id.*)

Defendant Apto removed Plaintiff's suit for tortious interference with a contractual relationship to this Court pursuant to 28 U.S.C. § 1334(b) on the grounds that Plaintiff's claim is related to and arises out of the Morris Schneider Wittstadt bankruptcy proceeding. (Notice of Removal at 1.) Plaintiff has subsequently moved to remand this case to state court arguing that: (1) the removal of this case is procedurally defective, as Defendant Re failed to join in the Notice of Removal;[3] (2) Plaintiff's suit is not "related to" the Morris Schneider Wittstadt bankruptcy, therefore the Court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b); and (3) if the Court determines that Plaintiff's suit is "related to" the Morris Schneider Wittstadt bankruptcy, the Court should either abstain from exercising its jurisdiction pursuant to the mandatory abstention provision, 28 U.S.C. § 1334(c)(2), abstain pursuant to the permissive abstention provision, 28 U.S.C. § 1334(c)(1), or remand the case on equitable grounds pursuant to 28 U.S.C. § 1452(b). (Pl.'s Mot. Remand at 4–22.)

In response, Defendants allege that the Court has "related to" jurisdiction, and thus subject matter jurisdiction, because the *Barton* doctrine applies to Plaintiff's suit, Defendants were acting as agents of the bankruptcy estate, and Defendants were administering the bankrupt-

**3.** Unanimity among defendants is not required when a party removes a case pursuant to bankruptcy jurisdiction, 28 U.S.C. § 1452. *See In re Terry Mfg. Co., Inc.,* 324 B.R. 147, 151 (Bankr. M.D. Ala. 2005) ("It now appears that the great weight of authority holds that unanimity is not required in a § 1452 removal."); *Whiney Nat. Bank v. Lakewood Investors,* No. 11-0179-WS-B, 2011 WL 3267160, at *1, n.8 (S.D. Ala. July 28, 2011) (citing *In re Mortgages Ltd.,* 427 B.R. 780, 788 (Bankr. D. Ariz. 2010) ("Numerous other jurisdictions have agreed with the Bankruptcy Court and held that the rule of unanimity does not apply to removal pursuant to § 1452(a)"); *In re C.D. Jones & Co., Inc.,* No. 09-31595, 2015 WL 2260707, at *5 (N.D. Fla. May 12, 2005). Therefore, the Court holds that Defendants' removal was procedurally proper.

cy estate pursuant to a bankruptcy court order. (Defs.' Resp. Mot. Remand at 2–5.) In addition, Defendants represent in their Notice of Removal that Defendant Apto "intends to file a claim for administrative expenses" in the Morris, Schneider, Wittstadt bankruptcy proceeding to indemnify them for a potential judgment in this case.[4] (Notice of Removal ¶ 11.) Defendants argue that their potential claim for indemnification could "conceivably effect" the administration of the Morris Schneider Wittstadt bankruptcy, and therefore confers "related to" jurisdiction. (Defs.' Resp. Mot. Remand at 5.)

In support of their Motion to Dismiss, Defendants argue that the *Barton* doctrine applies to Plaintiff's claim, and since Plaintiff failed to obtain leave of the bankruptcy court before filing his complaint in the Magistrate Court of Fulton County, Plaintiff's suit must be dismissed. (Defs.' Mot. Dismiss at 1–2.) In response, Plaintiff argues that the *Barton* doctrine does not apply to his claim because Defendants acted outside of the scope of authority conferred to them by the bankruptcy court. (Pl.'s Resp. Mot. Dismiss at 5.) Therefore,

Plaintiff was not required to obtain leave from the bankruptcy court before filing his claim, and Plaintiff's suit should not be dismissed. (*Id.*)

## II. LEGAL STANDARD

### A. Legal Standard on a Motion to Remand under Bankruptcy Jurisdiction

██ A defendant may remove a case to federal court only if the district court would have had jurisdiction over the case had the case been brought there originally. *Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 711 (11th Cir. 1997) (citing 28 U.S.C. § 1441). "The existence of federal jurisdiction is tested at the time of removal," and the defendant bears the burden of proof. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294–95 (11th Cir. 2008). "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Id.* at 1294.

██ Claims that are related to bankruptcy proceedings may be removed to the district court "if such district court has jurisdiction under [S]ection 1334." 28

4. Defendants applied for administrative expenses in the Morris Schneider Wittstadt bankruptcy on October 28, 2016 to indemnify them for any potential liability they may face in this case. The Eleventh Circuit has held that "jurisdictional facts that support removal must be judged at the time of the removal." *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The court may consider post-removal evidence, but it can only do so to establish the facts present at the time of removal. *Id.* at 946. While the Eleventh Circuit's established precedent surrounds removals to federal court on the basis of diversity or federal questions jurisdiction, other circuits have held that subject matter jurisdiction pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452(a), is assessed at the time of removal. *See California Public Retirement System v. WorldCom*, 368 F.3d 86 (2d Cir. 2004) (af- firming district court's determination of "related to" subject matter jurisdiction on the basis that jurisdiction is established upon facts at the time of removal); *In re Bissonnet Investments LLC*, 320 F.3d 520, 525 (5th Cir. 2003) (the existence of "related to" subject matter jurisdiction is determined at the time of removal). Defendants applied for administrative expenses to indemnify them for a potential judgment against them in this case in the Morris, Schneider, Wittstadt bankruptcy on October 28, 2016. However, Defendants removed this case on October 21, 2016. Therefore, the Court will not consider Defendants' actual October 28, 2016 claim for administrative expenses when undergoing its analysis because Defendants' claim for administrative expenses did not exist at the time of removal. The Court will only consider that Defendants' statement that they "intend" to submit a claim for administrative expenses in the Morris, Schneider, Wittstadt bankruptcy.

U.S.C. § 1452. Section 1334 provides for "original jurisdiction ... of all civil proceedings arising under, arising in or related to cases arising under title 11." 28 U.S.C. § 1334. Subject matter jurisdiction over disputes "related to" cases brought under Title 11 is broad but not limitless. *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 787–89 (11th Cir. 1990). If the outcome of the litigation could have a conceivable effect on the estate being administered in bankruptcy, the court has jurisdiction to hear the case. *Id.* at 788.

### B. Legal Standard on a Motion to Dismiss under Rule 12(b)(1)'

 This Court should dismiss a complaint under Rule 12(b)(1) only where it lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint. *See McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In this sense, a facial challenge equips a plaintiff with safeguards similar to those afforded by a Rule 12(b)(6) motion for failure to state a claim and limits the court to a comparable scope of review. *See id.* Thus, when reviewing a facial attack on jurisdiction, the Court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See id.; see also Hill v.*

*White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Here, Defendants' Motion to Dismiss is a facial attack because it argues that the *Barton* doctrine bars Plaintiff's claim as a matter of law, not as a factual matter. (*See* Defs.' Mot. Dismiss 7–11.) Accordingly, the Court will take as true the allegations in Plaintiff's Complaint for the purpose of ruling on Defendants' Motion to Dismiss.

## III. DISCUSSION

### A. "Related To" Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1334(b)

 The bankruptcy jurisdiction of the district court extends to "all civil proceedings arising under title 11 [of the U.S. Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Related to" subject matter jurisdiction exists when the result of a dispute could conceivably have an effect on the estate being administered in bankruptcy. *In re Ryan*, 276 Fed.Appx. 963, 966 (11th Cir. 2008) (citing *Lemco*, 910 F.2d at 788).[5] The Eleventh Circuit has held that a suit could conceivably effect the bankruptcy estate "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" or if the outcome could "in any way impact[ ] the handling and administration of the bankrupt estate." *Lemco*, 910 F.2d at 788 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). For "related to" jurisdiction to exist, "the suit need not be against the debtor or against the debtor's property" if the proceeding could effect the administration of the bankruptcy estate. *In re CDC Corp.*, 610 Fed.Appx. 918,

---

5. While 28 U.S.C. § 1334(b) confers two types of federal bankruptcy jurisdiction—"arising under" jurisdiction and "related to" jurisdiction—Defendants solely removed this case on the basis of "related to" jurisdiction. Therefore, the Court does not address the requirements of "arising under" jurisdiction.

921 (quoting *Lemco*, 910 F.2d at 788). The Eleventh Circuit construes "related to" jurisdiction "extremely broad[ly]." *CDC Corp.*, 610 Fed.Appx. at 921 (citing *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999).

### 1. Defendants Acting as Agents to Administer the Bankruptcy Estate

 Defendants argue that the Court has "related to" subject matter jurisdiction because Plaintiff's suit surrounds Defendant's conduct when Defendants were acting as agents of the bankruptcy estate and administering the bankruptcy estate pursuant to a bankruptcy court order. While Defendants may have been agents acting to administer the bankruptcy estate, the test in the Eleventh Circuit is whether the suit at hand could "conceivably effect" the administration of the bankruptcy estate. *See Lemco*, 910 F.2d at 788. Neither the existence of an agency relationship nor a contention that a suit centers on a bankruptcy court order are sufficient by themselves to establish a "conceivable effect" on the bankruptcy estate.

For example, in *Lemco*, the court held that a dispute between the debtor's landlord and the purchaser of the debtor's assets was not "related to" a bankruptcy proceeding although a bankruptcy court order governed the dispute between the two parties. *Id.* In *Lemco*, the debtor's landlord sought an award of damages in bankruptcy court against the purchaser of the debtor's property because the purchaser failed to remove the property from the landlord's land within sixty days following the sale pursuant to a bankruptcy court order. *Id.* at 785–86. The court rejected the landlord's argument that the bankruptcy court had jurisdiction to oversee the

dispute between the parties because of its continuing power to enforce its orders authorizing and confirming the sale of assets from the bankruptcy estate. *Id.* at 788 ("The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property.") The court held that the bankruptcy court did not have "related to" jurisdiction over the matter because the outcome of the dispute—i.e. requiring the purchaser to pay damages directly to the landlord—would have no conceivable effect on the bankruptcy estate. *Id.* at 789 (finding that there was no suggestion that proceeds from dispute brought by debtor's landlord would be turned over to the bankruptcy trustee). The *Lemco* court stated that "overlap between the bankrupt's affairs and another dispute is insufficient [to confer "related to" jurisdiction] unless [the dispute's] resolution also affects the bankrupt's estate or the allocation of assets among creditors." *Id.*

 The fact that a dispute stems from a bankruptcy court order associated with the sale of assets out of bankruptcy is not sufficient to confer "related to" jurisdiction without showing that it could conceivably have an effect on the bankruptcy estate. *Id.* (finding that the suit's "connections with the [bankruptcy] estate are simply too tenuous for jurisdiction to lie under § 1334(b).") Likewise, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b)." *Id.*; *see also Katt v. Sterling Group Physician Services, LLC*, No. 06-22273-CIV, 2007 WL 2782884, at *3 (S.D. Fla. Sept. 25, 2007) [6].

---

**6.** In *Katt v. Sterling Group Physician Services, LLC*, the defendant (purchaser of debtor's assets and liabilities out of bankruptcy) argued

that the bankruptcy court's issuance of several orders dictating the sales terms, claims management, and liabilities of defendant in

In contrast, in *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009), the court held that appellant's suit had "related to" jurisdiction because the suit could possibly have an effect on the administration of his bankruptcy estate. In *Lawrence*, a Chapter 7 debtor filed suit against the trustee, the trustee's court-approved legal counsel, and court-approved investigators hired by the trustee. *Id.* The court stated that the "essence of [appellant's] complaint" was that the trustee, trustee's legal counsel, and investigators allegedly colluded to enforce a bankruptcy court order, unlawfully forcing appellant to turn over assets held in a Mauritian trust to the bankruptcy estate. *Id.* at 1271. The court held that the resolution of appellant's suit "clearly could have an effect on the handling and administration of his bankruptcy estate" because the resolution of the dispute could impact the amount of assets in the estate from the Mauritian trust. *Id.*

Defendants cite *CDC Corp.* in support of their argument that acting as an agent in administering a bankruptcy estate confers "related to" jurisdiction. In *CDC Corp.*, the court held that appellant's suit was sufficiently "related to" a bankruptcy. *CDC Corp.*, 610 Fed.Appx. at 921. The appellant sought bankruptcy court permission to sue the bankruptcy estate's general counsel for acts the general counsel took when he was a member of the board of the bankrupt entity. *Id.* at 919–920. While the court stated that the general counsel's role in his position was to "facilitate the administration" of the bankruptcy estate, the court

focused on the fact that the bankruptcy estate "[held] a Director and Officer insurance policy that could conceivably be triggered if [appellant's] suit against [the general counsel] were successful," which "would lead to a diminishment of the policy reserve altering CDC Corporation's rights and liabilities." *Id.* at 921. The Court does not find Defendants' argument persuasive that the general counsel's role as an agent administering the estate was essential to the *CDC Corp.* court's determination that the "conceivable effect" test was met.

The Court finds that Defendants' alleged relationship as an agent of the Debtor and the fact that Defendants were acting pursuant to a bankruptcy court order, under the circumstances presented here, are not sufficient to establish "related to" jurisdiction on their own. Defendants have not shown that the nature of their agency relationship or the bankruptcy court's order of April 7, 2016 authorizing the removal of confidential information from the subject computers—without more—would impact the administration of the Debtor's bankruptcy. Defendants must demonstrate that Plaintiff's suit could conceivably affect the bankrupt estate by showing either that the outcome of the suit could alter the Debtor's rights or liabilities or by impacting the handling and administration of the estate.

### 2. Defendants' Potential Claim for Indemnification

Lastly, Defendant Apto states in its Notice of Removal that it "intends" to file a

acquiring assets in a bankruptcy proceeding were sufficient to confer "related to" jurisdiction in bankruptcy court over a class action lawsuit for breach of contract. 2007 WL 2782884, at *3 (S.D. Fla. Sept. 25, 2007). While the dispute centered on a sale pursuant to a bankruptcy court order, the court held that because the property was sold to defendant, it was outside the hands of the debtor

and therefore out of reach of the bankruptcy court's jurisdiction. *Id.* at *6. Thus, "where the dispute does not involve identification of debtor's property interest, does not affect other creditors, and could not have effect on debtor's estate the bankruptcy court lacks jurisdiction to hear the case." *Id.* at *6 (citing *Lemco*, 910 F.2d at 789).

claim for administrative expenses in Debtor's bankruptcy proceeding and argues that its claim for administrative expenses could "conceivably effect" the administration of Debtor's bankruptcy estate. (Notice of Removal ¶ 11; Defs.' Resp. Mot. Remand at 5.) In response, Plaintiff argues that potential claims of indemnification are not sufficient to establish "related to" jurisdiction. *See Ret. Sys. of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 529 (M.D. Ala. 2002) (holding that where a lawsuit's potential effect on a bankruptcy estate is "speculative and premature," then such a case fails to warrant federal bankruptcy "related to" jurisdiction); *Skylark v. Honeywell Int'l, Inc.*, No. 01-5069-CIV, 2002 WL 32101980, at *3 (S.D. Fla. Jan. 25, 2002) (finding that defendant's potential cross-claims for contribution and indemnity against a bankrupt third-party had "no bearing on the estate in bankruptcy unless and until plaintiff obtain[ed] a judgment against defendant"); *City of Birmingham Retirement & Relief Fund v. Citigroup, Inc.*, No. CV-03-BE-0994-S, 2003 WL 22697225, at *5 (N.D. Ala. Aug. 12, 2003) (holding that "the primary action between plaintiff and defendants has no effect on the [WorldCom Corporation's] bankruptcy estate, but at best is merely a precursor to a potential claim of indemnification against [WorldCom Corporation] by the defendants").[7]

More recent Eleventh Circuit decisions, however, lead the Court to conclude that a defendants' claims for indemnification will satisfy the conceivable effect test adopted by the Eleventh Circuit. For example, in *Wortley v. Bakst*, 844 F.3d 1313, 1316 (11th Cir. 2017), the plaintiffs alleged that the attorney hired by the trustee conducted a scheme to improperly influence the bankruptcy judge to secure favorable rulings for the trustee. The court held that the allegations made by the plaintiff "challenge[d] the legitimacy of the bankruptcy court proceedings, and a favorable outcome for the [plaintiffs] in their tort suit would call into question (or at least conceivably call into question) [the Judge's] rulings, orders, and judgements in the [bankruptcy proceeding]." *Id.* at 1320. The court emphasized that that the conceivable effect test is satisfied when an action "*in any way* impacts upon the handling and administration of the bankrupt estate." (emphasis added) (internal citations omitted).

In the case of *In re Ryan*, 276 Fed. Appx. 963, 964 (11th Cir. 2008), two non-debtors sought to have the court determine which of them owned certain business records. The bankruptcy trustee sold the debtor's interest in the stock of a number of corporate entities (the "Entities") for $60,000 to Entrust NPL Corporation ("Entrust"). *Id.* The business records of Riverside Capital Advisors, Inc. ("Riverside"), one of the corporate entities, was not given to Entrust in the sale because of a disagreement about who owned the business records. *Id.* at 964–65. Winchester Global Trust Company Limited ("Winchester") argued that they owned the business records pursuant to a severance agreement made with the debtor before the debtor filed for bankruptcy. *Id.* The court stated that "the dispute between Winchester and Entrust over the Riverside documents could conceivably affect the bankruptcy estate because the resolution of the ₍dispute could impact the

---

7. Plaintiff also relies on *Ret. Sys. of Ala. v. Merrill Lynch& Co.*, 209 F. Supp. 2d 1257, 1265 (M.D. Ala. 2002). But in that case, the court concluded that "subject matter jurisdiction in [the] case was rather unclear" and did not make a final determination on the matter. *Id.* at 1267. Instead, the court used its discretion to abstain under Section 1334(b). *Id.* at 1269.

amount of money in the estate." *Id.* at 966. The foundation for the court's determination of "related to" jurisdiction was that "Entrust [would] have a viable claim for a refund from the [bankruptcy] estate of all or part of the $60,000 purchase price" based on Entrust's statement that "if Entrust does not receive the benefit of its bargained for consideration, i.e. the books and records relating to the Entities, it *will* assert a claim against the bankruptcy state in the amount of at least $60,0000.00." *Id.*; *id.* at n.3. (emphasis added).

█ Given the Eleventh Circuit's extremely broad construction of "related to" jurisdiction and its decision in *In re Ryan*, the Court finds that this case has "related to" subject matter jurisdiction. Similar to *Ryan* where a non-debtor potentially planned to submit a claim for a refund, Defendants "intend" to submit a claim for indemnification in the Debtor's bankruptcy proceeding for a potential judgment against them in this case. In the event that Defendants succeed on the merits of their administrative claim, the amount of funds available for other creditors would be diminished in the Debtor's bankruptcy proceeding. This, in turn, would impact the administration of the Morris Schneider Wittstadt bankruptcy estate by affecting the allocation of assets among creditors. As such, the Court determines that it has "related to" jurisdiction to hear Plaintiff's claim.

### 3. The *Barton* Doctrine Conferring Subject Matter Jurisdiction

█ Defendants also contend that the *Barton* doctrine applies to Plaintiff's lawsuit, which subsequently grants the Court "related to" jurisdiction. "Under the *Barton* doctrine, a plaintiff must obtain leave of the bankruptcy court before initiating an action in district court when that action is against a bankruptcy-court-approved officer." *CDC Corp.*, 610 Fed.Appx. at 921 (citing *Carter v. Rodgers*, 220 F.3d 1249, 1252 & n. 4, 1253 (11th Cir. 2000). If the plaintiff fails to obtain leave from the bankruptcy court before bringing suit, the plaintiff's claim cannot proceed and plaintiff's suit is subject to dismissal. *Id.* at 922. Defendants are correct in asserting that the *Barton* doctrine applies whenever a plaintiff's suit is "related to" a bankruptcy proceeding under the conceivable effect test. *See e.g., CDC Corp.*, 610 Fed.Appx. at 922 (citing *Lawrence*, 573 F.3d at 1270–71). However, to the Court's knowledge, no other court in this circuit or in any other federal circuit has held that the *Barton* doctrine reciprocally confers "related to" jurisdiction to the district court. In fact, the *Barton* doctrine is typically understood to deprive a federal court of jurisdiction to hear a case, not confer jurisdiction. *See e.g., Carter*, 220 F.3d at 1255 ("Plaintiff Carter failed to obtain leave from the bankruptcy court when such leave was a pre-requisite to filing this civil action against the Defendants outside of that court. Therefore, the district court lacked subject matter jurisdiction and properly dismissed this civil action against these Defendants."); *Lawrence*, 573 F.3d at 1267–70 (upholding the district court's decision to dismiss for lack of subject matter jurisdiction because appellant failed to obtain leave of the bankruptcy court before filing his amended complaint); *CDC Corp.*, 610 Fed.Appx. at 922 (dismissing appellant's suit against the general counsel under the *Barton* doctrine because appellant failed to obtain permission from the bankruptcy court to bring suit). Therefore, the Court finds that the *Barton* doctrine does not confer "related to" jurisdiction in this case.

### B. Mandatory Abstention

In the alternative, Plaintiff argues that if there is "related to" jurisdiction, the Court

must remand this case to the Magistrate Court of Fulton County pursuant to the mandatory abstention provisions in 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

 Courts have interpreted Section 1334(c)(2) to require abstention when all of the following four requirements are met: (1) the claim has no independent basis for federal jurisdiction, other than Section 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in a state court of appropriate jurisdiction. *In re United Container LLC*, 284 B.R. 162, 171 (Bankr. S.D. Fla. 2002). A state court of "appropriate jurisdiction" is one that actually has jurisdiction to hear the matter at hand, as opposed to the state court that is "most appropriate" in terms of venue. *In re Terry Mfg. Co. Inc.*, 324 B.R. 147, 153 (Bankr. M.D. Ala. 2005).

Neither party disputes that Plaintiff's claim is timely, commenced in state court, and the only basis for jurisdiction is Section 1334(b). Plaintiff and Defendants only contest two of the four requirements. Defendants argue that Plaintiff's claim is a "core-proceeding" and that the Magistrate Court of Fulton County does not have "appropriate jurisdiction" to hear Plain-

tiff's claim under the *Barton* doctrine. Plaintiff argues that his claim is a non-core proceeding and that his claim is not barred by the *Barton* doctrine because Defendants acted outside the scope of their authority.

### 1. Plaintiff's Claim as a Non–Core Proceeding

 Defendants argue that Plaintiff's claim is "undoubtedly a core proceeding because [the Defendants] were acting as the agents of Debtor's attorney." (Defs.' Resp. Mot. Remand at 7.) "Core proceedings are narrow in scope, include only those cases that implicate the property of the bankruptcy estate and either invoke substantive rights created by federal bankruptcy law or that exist exclusively in the bankruptcy context." *Wortley*, 844 F.3d at 1318. A non-core proceeding, in contrast, is one which "could conceivably have an effect on the estate being administered in bankruptcy" and is considered a "related case, like a tort or contract dispute, that could potentially affect the bankruptcy estate." *Id.*; *see e.g.*, *Toledo*, 170 F.3d at 1350 (holding that an adversary proceeding was a non-core proceeding because the adversary proceeding "sought to vindicate state-created common law rights"); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (a state-law claim "could be enforced in a state court proceeding absent bankruptcy" and is a non-core proceeding).

 The Court finds that Plaintiff's claim is a non-core proceeding. Plaintiff's claim for tortious interference does not directly implicate the property of Debtor's estate nor does it invoke a substantive right created by federal bankruptcy law. As the Court has previously determined that Plaintiff's claim could conceivably effect the administration of the Debtor's bankruptcy estate and the focus of Plain-

tiff's claim is a tort[8] dispute, the Court holds that Plaintiff's claim is a non-core proceeding.

### 2. State Court of Appropriate Jurisdiction

 Defendants argue that Plaintiff's suit cannot be tried in the Magistrate Court of Fulton County because the state court does not have jurisdiction to hear the case under the *Barton* doctrine, and thus mandatory abstention is inapplicable. As discussed previously, under the *Barton* doctrine, a plaintiff must obtain leave of the bankruptcy court before initiating an action against a bankruptcy court-approved officer. *CDC Corp.*, 810 Fed.Appx. at 921. "This rule applies equally whether a state court appointed [officer] is sued in state court, or ... the [officer] is sued in federal court." *Patco Energy Express, LLC v. Lambros*, 353 Fed.Appx. 379, 381 (11th Cir. 2009) (citing *Carter*, 220 F.3d at 1253) ("When leave is required, it is required before pursuing remedies in either state or other federal courts.").

The Eleventh Circuit has included attorneys and investigators hired by a trustee among those who cannot be sued without the plaintiff first obtaining leave of the bankruptcy court. In *Lawrence*, a Chapter 7 debtor filed suit against the trustee appointed to administer his estate, the trustee's court-approved legal counsel, and court-approved investigators hired by the trustee. *Lawrence*, 573 F.3d 1270. The court held that the court-approved legal counsel "functioned as the equivalent of court-appointed officers by helping the trustee execute his official duties." *Id.* at 1270. In addition, the court noted that the "bankruptcy court also approved the Trustee's hiring of [the investigator] ... to

help discharge [the Trustee's] duty to locate assets belonging to the bankruptcy estate. Thus, [the investigator] functioned as the equivalent of [a] court appointed officer." *Id.*

Here, Defendants were hired pursuant to a bankruptcy court order, and their task in destroying the Debtor's confidential information was in aid of the Auction Advisors' administration of the bankruptcy estate. Therefore, Defendants function as the equivalent of court-appointed officers and fall under the purview of the *Barton* doctrine.

### 3. Ultra Vires Exception to the *Barton* Doctrine

 Plaintiff argues that the *Barton* doctrine is inapplicable because the Defendants acted outside of the scope of their authority when they allegedly interfered with the contract between Plaintiff and Auction Advisors. "Virtually all courts agree" that the *Barton* doctrine is inapplicable when a trustee or court-appointed officer "exceed[s] the scope of his authority," or acts "ultra vires." *In re Solar Financial Services, Inc.*, 255 B.R. 801, 803 (Bankr. S.D. Fla. 2000).

 "The classic application of the 'ultra vires' exception is the case of an action against a trustee or receiver who seizes or otherwise attempts to administer property that is not receivership property, but that actually belongs to a third party." *In re Cruz*, 562 B.R. 812, 817 (Bankr. M.D. Fla. 2016) (quoting *In re DMW Marine, LLC*, 509 B.R. 497, 506 (Bankr. E.D. Penn. 2014) (internal citations omitted). For example, in *Teton Millwork Sales v. Schlossberg*, 311 Fed.Appx. 145 (10th Cir. 2009), a corporation claimed that a court-appointed re-

---

8. Plaintiff's claim for damages in the Magistrate Court Complaint is in the amount of $15,000 or less. (Doc. 1–1 at 4.)

ceiver wrongfully seized its mail and other financial assets, including a checking account and two securities accounts. *Id.* at 147. In *Teton*, Schlossberg was appointed as receiver in a divorce proceeding to collect assets in which the husband, Palencar, held ownership interest. *Id.* at 146–7. Pursuant to a West Virginia Family Court order, Schlossberg was "vested with actual legal and equitable title to and the right to obtain record title to and/or liens up and/or actual physical custody and possession of all of the assets" of Palencar. *Id.* The court authorized Schlossberg to "take such action as may appear necessary or desirable to obtain ancillary jurisdiction of these proceedings in such other States ... as may appear appropriate." *Id.* Subsequently, Schlossberg used "this authority to seize the assets of [Tenton Millwork Sales ("TMS")], a corporation in which Palencar was a twenty-five percent shareholder." *Id.* TMS filed suit, alleging that Schlossberg exceeded his authority as receiver "by seizing TMS's assets in Wyoming, as well as its proprietary information and mail." *Id.* The court noted that "while the court order permitted Schlossberg to collect Palencar's assets even if they were held in the name of another entity, including TMS, the court order did not grant Schlossberg authority to seize assets that did not belong to Palencar." *Id.* at 151. Therefore, the court held that the *Barton* doctrine did not apply. *Id.*

In contrast, *In Estate of Jackson ex rel. Jackson–Platts v. Sandnes*, No. 8:13-cv-1133-T-33MAP, 2014 WL 408757, at *3 (M.D. Fla. Feb. 3, 2014), the plaintiff, the Jackson Estate, failed to obtain leave of the Maryland Court prior to bringing a lawsuit. Plaintiff Jackson Estate argued that the *Barton* doctrine did not apply because "the [c]omplaint allege[d] 'ultra vires' conduct, which preclude[éd] the application of the *Barton* doctrine." The court stated that the basis of the Jackson Estate's complaint was that the Estate was "not satisfied with the manner in which the Maryland Court appointed the Receiver, the duties the Maryland Court bestowed upon the Receiver, the Receiver's choice of counsel, and the business dealings that the Maryland Court authorized the Receiver to undertake" and that it did not appear to the court that "the main thrust of the Complaint concerns conduct that was not authorized by the Maryland Court. *Id.* at *5. The Court held that the ultra vires exception to the *Barton* doctrine did not apply to the Jackson Estate's lawsuit. *Id.* at *3.

In this case, the bankruptcy court order granted Defendants' authority to "delete or destroy" Debtor's confidential information located on the technology equipment as a "neutral digital or computer forensic examiner." (Defs.' Mot. Dismiss Ex. A at 7.) In contrast, the bankruptcy court order approving Auction Advisors' services delineated the scope of Auction Advisors' authority to include "the sale of the Debtor's furniture, fixtures, and equipment, specifically including all office computers and electronics." *Morris Schneider Wittstadt*, No. 15–33370, at Doc. 622. Defendants, therefore, were not given authority by the bankruptcy court to initiate or terminate sales contracts with third-parties. When the contract between Plaintiff and Auction Advisors' was terminated on or around July 15, 2016, Defendants stated that "together with the professionals in this case, *we have made the collective decision* to shred the media and dispose of the assets." Defendants were given no such authority from the bankruptcy court to terminate the sales contract between Auction Advisors and Plaintiff. (Notice of Removal Ex. A.)

Given that Plaintiff is alleging that Defendants exceeded their authority by managing the sale of Debtor's property and is

not alleging any issue relating to Defendants' duties or role in erasing or deleting confidential information, the Court finds Defendants' conduct exceeded the scope of authority granted by the bankruptcy court. Therefore, the *Barton* doctrine does not bar Plaintiff's suit from proceeding in state court, and the Magistrate Court of Fulton County has jurisdiction to hear the suit.

The Court finds that all of the requirements of Section 1334(c) for mandatory abstention have been met. Plaintiff's suit is a non-core proceeding and the Magistrate Court of Fulton County has jurisdiction to hear Plaintiff's suit. Therefore, remand to the Magistrate Court of Fulton County is required. Because the Court has found that Plaintiff's claim is not barred by the *Barton* doctrine and is remanding this case to the Magistrate Court of Fulton County, the Court **DENIES** Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand [Doc. 8] is **GRANTED** and Defendants' Motion to Dismiss is **DENIED** [Doc. 4]. The Court had subject matter jurisdiction to hear Plaintiff's suit and removal was proper. Nevertheless, jurisdiction cannot and may not be exercised because mandatory abstention is required under 28 U.S.C. § 1334(c)(2). The Clerk is **DIRECTED** to **REMAND** this case back to the Magistrate Court of Fulton County and close the case.

**IT IS SO ORDERED** this 1st day of May, 2017.