[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 15-11923 & 15-90007

_____

D.C. Docket No. 11-01999-AJC

BARBARA WORTLEY,
RICHARD I. CLARK,
LIBERTY ASSOCIATES, LC,
LIBERTY PROPERTIES AT TRAFFORD, LLC,
ADVANCED VEHICLE SYSTEMS, LLC,

Plaintiffs - Appellants,

versus

MICHAEL R. BAKST,
GEORGE STEVEN FENDER,

Defendants - Appellees.

_____

Direct Appeal from the United States Bankruptcy Court
for the Southern District of Florida

_____

Before MARCUS, JORDAN, and WALKER,[*] Circuit Judges.

JORDAN, Circuit Judge:

Trafford Distributing Center provided warehousing and fulfillment services in Pennsylvania before it became insolvent in 2008. Trafford's president and sole shareholder, Barbara Wortley, filed a Chapter 7 petition for bankruptcy on Trafford's behalf in the Southern District of Florida, and the case was assigned to Bankruptcy Judge John Olson.

Judge Olson appointed a trustee, who in turn hired attorney Michael Bakst to pursue three adversary cases on behalf of the Trafford bankruptcy estate against Mrs. Wortley and other related individuals and entities (whom we refer to as "the Wortley parties"). In August of 2009, while Mr. Bakst was litigating the Trafford adversary cases, his law firm, Ruden McClosky, hired Judge Olson's fiancé, Steven Fender, to join its bankruptcy group. In connection with his new job, Mr. Fender relocated from Orlando to South Florida, where Judge Olson lived and worked. Five months later, the Trafford adversary cases were tried together at a bench trial before Judge Olson. The proceedings ended badly for the Wortley parties—Judge Olson ordered them to pay over $2.5 million to Trafford's bankruptcy estate.

---

[*] The Honorable John M. Walker, United States Circuit Judge for the Second Circuit, sitting by designation.

2

In April of 2011, the Wortley parties sued Mr. Bakst and Mr. Fender in state court, alleging that Mr. Bakst, the head of Ruden McClosky's bankruptcy group, hired Mr. Fender as part of a scheme to improperly influence Judge Olson and secure favorable rulings for the trustee in the Trafford bankruptcy proceedings. The state court action was removed to federal bankruptcy court, where it was dismissed by Bankruptcy Judge A. Jay Cristol on four independent grounds. Judge Cristol certified his decision for direct appeal to this Court, and we accepted the appeal. *See* 28 U.S.C. § 158(d)(2)(A).

As we explain, we do not have appellate jurisdiction to consider the merits of the Wortley parties' appeal. The bankruptcy court had only "related to" jurisdiction over the claims asserted against Mr. Bakst and Mr. Fender by the Wortley parties, and as a result it did not have authority to enter a final order of dismissal. We must therefore construe the bankruptcy court's dismissal order as a report with proposed conclusions of law, a document which, in and of itself, carries no adjudicative authority. And that creates the jurisdictional problem because § 158(d)(2)(A), under which this appeal was certified, only allows us to consider "judgment[s], order[s], or decree[s]"—rulings which have adjudicative consequences—of the bankruptcy court.

3

# I

In August of 2010, after learning that Mr. Fender had been hired by Ruden McClosky, the Wortley parties moved for Judge Olson's recusal on two grounds. First, they argued that the situation created the appearance of impropriety under 28 U.S.C. § 455(a). Second, they claimed that Judge Olson was disqualified from presiding over the Trafford bankruptcy proceedings under 28 U.S.C. § 455(b) because Mr. Fender had an actual interest in the outcome. Judge Olson denied the recusal motion, concluding that § 455(a) did not apply and that recusal was not mandated under § 455(b). The Wortley parties submitted a second motion for Judge Olson's recusal in September of 2010, and then filed an appeal of the denial of their first recusal motion in the district court. In October of 2010, the district court held a status conference, during which it expressed concern over a potential appearance of impropriety and suggested that the proper course of action would be for Judge Olson to recuse himself. A few days later, Judge Olson recused himself *sua sponte*, and the case was assigned to Judge Cristol.

The Wortley parties then asked Judge Cristol to vacate Judge Olson's prior rulings and orders and moved for sanctions against Mr. Bakst and the bankruptcy trustee. Judge Cristol denied the motion to vacate, reasoning that any remedy should be sought on appeal. The Wortley parties moved for reconsideration, but that motion and the motion for sanctions remain pending before Judge Cristol.

In the meantime, as noted, the Wortley parties filed this separate action against Mr. Bakst and Mr. Fender in state court. They alleged that, after learning from Judge Olson that he hoped Mr. Fender would secure employment in South Florida so the two could live together, Ruden McClosky hired Mr. Fender to work for the firm's bankruptcy group in exchange for favorable rulings from Judge Olson in the Trafford adversary cases, including a substantial and unjustified award of attorneys' fees. Based on these allegations, the complaint asserted two state-law claims: Count I alleged a conspiracy to obstruct the due operation of law and deprive the plaintiffs of their right to a fair trial; and Count II alleged the fraudulent corruption of the judicial process. The Wortley parties sought compensatory damages, including the attorneys' fees and costs associated with litigating Judge Olson's alleged bias in federal court.[1]

Mr. Bakst and Mr. Fender removed the state court action to the bankruptcy court, and then moved to dismiss the complaint. Judge Cristol granted the motion to dismiss on four independent grounds: (1) the complaint had been filed in state court without leave of the bankruptcy court in violation of the doctrine established in *Barton v. Barbour*, 104 U.S. 126 (1881); (2) Mr. Bakst and Mr. Fender were entitled to quasi-judicial immunity; (3) Mr. Bakst and Mr. Fender were immune

---

[1] We do not express any views as to the allegations in the Wortley parties' complaint.

5

from suit under Florida's litigation privilege; and (4) the complaint failed to state a claim on which relief could be granted.

Judge Cristol granted the Wortley parties' request to certify a direct appeal of the dismissal order, and we accepted the appeal under § 158(d)(2)(A). Our review of the dismissal of the complaint is plenary. *See, e.g.*, *In re Failla*, 838 F.3d 1170, 1174 (11th Cir. 2016) (explaining that bankruptcy court's legal conclusions are reviewed *de novo*).

## II

Before we can reach the merits of the appeal, we must address our jurisdiction even though the parties have not questioned it. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction."); *Rinaldo v. Corbett*, 256 F.3d 1276, 1278 (11th Cir. 2001) (reviewing appellate jurisdiction *sua sponte*). Our appellate jurisdiction derives from § 158(d)(2)(A), so we begin with its text. *See generally Huff v. United States*, 192 F.2d 911, 913 (5th Cir. 1951) (explaining that appellate jurisdiction "is purely statutory").

In full, § 158(d)(2)(A) reads as follows:

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

The "first sentence of subsection (a)" of § 158 grants jurisdiction to the district courts to hear bankruptcy appeals:

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of [T]itle 11 increasing or reducing the time periods referred to in section 1121 of such [T]itle; and

(3) with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this [T]itle.

§ 158(a). And so, § 158(d)(2)(A) gives us jurisdiction to hear certified, direct appeals from "final judgments, orders, and decrees," as well as certain "interlocutory orders and decrees."

7

Regardless of whether they are "final" or "interlocutory," our appellate jurisdiction under § 158(d)(2)(A) is limited to judgments, orders, and decrees. We must therefore determine whether the bankruptcy court had the authority to enter the order of dismissal that it certified for direct appeal. The answer to that question depends on whether the action filed by the Wortley parties constituted a core proceeding under bankruptcy law. If the bankruptcy court could not issue a final order of dismissal, we must then address whether that lack of authority affects our appellate jurisdiction.

## III

The basic tenets of bankruptcy court jurisdiction are straightforward. Bankruptcy courts may hear two types of proceedings in connection with the administration of a bankruptcy estate: core proceedings and non-core proceedings. If a matter is a core proceeding (i.e., the sort of case that arises only in the bankruptcy context or involves rights created by federal bankruptcy law), then the bankruptcy court can enter final judgment absent consent by the parties. If a matter is a non-core proceeding (i.e., a related case, like a tort or contract dispute, that could potentially affect the bankruptcy estate), then the bankruptcy court can entertain the dispute but generally cannot enter final judgment. And if a case does not fit in either category, the bankruptcy court cannot hear the case at all. These

relatively simple jurisdictional principles become a bit more complicated when applied to the unusual allegations here.

## A

The bankruptcy jurisdiction of the district courts extends to "all civil proceedings arising under [T]itle 11 [of the U.S. Code], or arising in or related to cases under [T]itle 11." 28 U.S.C. § 1334(b).  Subject to constitutional limitations, the bankruptcy courts, in turn, exercise the powers delegated to them by the district courts pursuant to 28 U.S.C. § 157.  Under § 157, a bankruptcy court's authority to enter a final order or judgment depends on whether a case is categorized as a core proceeding or non-core proceeding.  *See* § 157(b)–(c).  Bankruptcy courts have authority to enter final orders and judgments in "core proceedings arising under [T]itle 11, or arising in a case under [T]itle 11."  § 157(b)(1).  Bankruptcy courts may also hear non-core proceedings that are "otherwise related to a case under [T]itle 11," but they may not enter final orders in these related non-core cases unless all parties consent.  *See* § 157(c)(1).  *See also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1941–42 (2015) (holding that, under Article III, litigants may validly consent to adjudication by bankruptcy courts over claims governed by *Stern v. Marshall*, 564 U.S. 462, 503 (2011)—i.e., "claim[s] designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter") (citation and internal quotation

marks omitted). If the parties in a non-core proceeding do not consent to the bankruptcy court's exercise of final adjudicatory authority, the bankruptcy court must prepare proposed findings of fact and/or conclusions of law for the district court to review *de novo*. *See* § 157(c)(1).[2]

Core proceedings are narrow in scope, and include only those cases that implicate the property of the bankruptcy estate and either invoke substantive rights created by federal bankruptcy law or that exist exclusively in the bankruptcy context. *See Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1347–48 (11th Cir. 1999). But related non-core proceedings can be quite broad, encompassing matters that "could conceivably have an effect on the estate being administered in bankruptcy" even if they are not proceedings "against the debtor or against the debtor's property." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling

---

[2] Because we conclude that the bankruptcy court lacked statutory core jurisdiction, we need not address whether a statute providing bankruptcy courts final adjudicative authority over the state-law claims in this case would run afoul of Article III under *Stern*.

and administration of the bankrupt estate." *Id.* (citation and internal quotation marks omitted).

The Wortley parties contend that the bankruptcy court lacked the authority to dismiss their state-law claims. First, they argue that their action is not a "core proceeding" because it does not invoke substantive rights created by federal bankruptcy law and could exist outside of bankruptcy. According to the Wortley parties, their complaint merely asserts stand-alone tort claims under state law and does not allege violations of federal bankruptcy law. *See* Br. of Appellants at 27. Second, they contend that the action is not a related "non-core proceeding" because it was brought against Mr. Bakst and Mr. Fender in their individual capacities for conduct that occurred outside the scope of Mr. Bakst's official representation of the trustee, and because a favorable judgment would not affect Trafford's bankruptcy estate or its administration (in other words, it would not affect the amount of funds available for distribution or the way that money is allocated to Trafford's creditors). That is because a judgment in favor of the Wortley parties would require Mr. Bakst and Mr. Fender to pay damages out of their own pockets, and not with bankruptcy estate resources. *See* Reply Br. of Appellants at 3–4.

Mr. Bakst and Mr. Fender respond that this matter would have no existence outside of the Trafford bankruptcy proceedings. The complaint filed by the Wortley parties, they note, alleges a conspiracy the purpose of which was to

11

influence the outcome of the adversary proceedings in the bankruptcy court and to reward Mr. Bakst for his alleged assistance to Mr. Fender and Judge Olson through substantial and unjustified attorneys' fees for work purportedly done on behalf of Trafford's bankruptcy estate. Mr. Bakst and Mr. Fender reason that, if the alleged conspiracy actually existed, then the judgments against the Wortley parties in the Trafford adversary cases and the attorneys' fees awarded to the trustee would have to be vacated, which would definitely—and not just conceivably—affect the administration of the bankruptcy estate. *See* Br. of Appellees at 25.

## B

Core proceedings, as noted, are those that "involve[ ] a right created by the federal bankruptcy law" or that "would arise only in bankruptcy," such as "the filing of a proof of claim or an objection to the discharge of a particular debt." *In re Toledo*, 170 F.3d at 1348 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). In determining whether an action constitutes a core proceeding, the question is "whether [it] stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1190 (11th Cir. 2015) (quoting *Stern*, 564 U.S. at 499). If so, bankruptcy courts have full and final adjudicatory authority.

This case does not fit the bill. Although the action filed by the Wortley parties stems from a bankruptcy in a literal sense (because the alleged scheme

12

purportedly took place during the Trafford bankruptcy proceedings), it is not the sort of case that would arise only in bankruptcy because the corruption or improper conduct of a judge can occur in any type of legal proceeding. *Cf., e.g., United States v. Shenberg*, 89 F.3d 1461, 1465–68 (11th Cir. 1996) (detailing extensive judicial corruption in the Eleventh Judicial Circuit of Florida). This case also does not involve any rights created by federal bankruptcy law. The complaint only asserts state-law tort claims, which are not created by the Bankruptcy Code and are not particular to federal bankruptcy law. *See, e.g., Waldman v. Stone*, 698 F.3d 910, 922 (6th Cir. 2012) (holding that "ordinary state-law claims for fraud" against creditor were not core proceedings); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 190 (5th Cir. 1990) (concluding that fraud-based federal RICO claims against the officers of the debtor-corporation did not constitute core proceedings); *In re O'Brien*, 414 B.R. 92, 98–99 (S.D. W. Va. 2009) (ruling that claims for fraud, civil conspiracy, aiding and abetting wrongful acts, tortious interference with contract, and negligence asserted by cattleman against bank, bank president, and member of bank's board of directors for their alleged involvement in the debtor's fraudulent scheme were "non-core" proceedings).

## C

Having concluded that the action filed by the Wortley parties is not a core proceeding under § 157(b)(1), we consider whether it is nevertheless "related to"

13

Trafford's bankruptcy proceedings, such that jurisdiction was proper under § 157(c)(1). To determine whether a case is a related non-core proceeding, we ask whether the potential outcome of the dispute—in this case, a judgment against Mr. Bakst and Mr. Fender for conspiring to bribe Judge Olson and an award compensating the Wortley parties for, among other things, the attorneys' fees incurred to litigate Judge Olson's alleged bias—would "conceivably have an effect" on the bankruptcy estate. *See Lemco Gypsum*, 910 F.2d at 788.

At oral argument, counsel for the Wortley parties asserted that, for an action to be considered even a non-core proceeding, a case must have a "legal" effect on the estate, meaning a *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) effect. But the "conceivable effect" test under *Lemco Gypsum* is much broader than that. The non-core category encompasses cases that "could conceivably have an effect on the estate being administered in bankruptcy" and includes any action "which *in any way* impacts upon the handling and administration of the bankrupt estate." *Id.* (emphasis added).

In their complaint, the Wortley parties allege that corruption affected the handling and result of the Trafford adversary cases. The allegations challenge the legitimacy of the bankruptcy court proceedings, and a favorable outcome for the Wortley parties in their tort suit would call into question (or at least conceivably call into question) Judge Olson's rulings, orders, and judgments in the Trafford

14

adversary cases. To conclude that this case is related to the Trafford bankruptcy proceedings, we need not resolve what preclusive effect (if any) a parallel tort judgment would have. It is conceivable, and therefore sufficient, that a judgment in favor of the Wortley parties on their tort claims would affect Judge Cristol's rulings on the still-pending post-judgment motions in the Trafford adversary cases. Those motions involve (and are based on) many of the same allegations pled in this action, and the outcome of those motions could possibly affect the handling and administration of the Trafford bankruptcy estate. We therefore conclude that the Wortley parties' tort action against Mr. Bakst and Mr. Fender is a non-core proceeding related to the Trafford bankruptcy case.

## IV

In a related non-core proceeding like this one, a bankruptcy court cannot enter a final order without the parties' consent. *See Wellness Int'l Network*, 135 S. Ct. at 1940 (describing how, under § 157, a bankruptcy court may not enter orders or judgments in non-core proceedings unless all parties consent). The parties here did not consent, meaning that the bankruptcy court lacked authority to enter the final order of dismissal and instead should have submitted proposed conclusions of law to the district court under § 157(c)(1). As a result, we must decide whether § 158(d)(2)(A) provides us with appellate jurisdiction to review the bankruptcy court's unauthorized order of dismissal.

Orders that should have been submitted as reports containing proposed findings of fact and/or conclusions of law ordinarily do not present a problem for appellate review because bankruptcy court orders are usually first appealed to the district court. *See* § 157(b)(1) ("Bankruptcy judges . . . may enter appropriate orders and judgments, subject to review under [§] 158 . . . ."); § 158(a) (granting district courts appellate jurisdiction in bankruptcy cases). And a district court may treat an unauthorized order as a report with proposed findings of fact and/or conclusions of law under § 157(c)(1), thereby exercising *de novo* review before entering judgment. *See, e.g., N.Y. Skyline, Inc. v. Empire State Bldg. Co.*, 542 B.R. 321, 324 (S.D.N.Y. 2015) (treating bankruptcy court order as proposed findings of fact and conclusions of law, and citing local rules allowing such treatment). The district court's final judgment eventually makes its way to a circuit court by way of an appeal under § 158(d)(1).

Appellate jurisdiction under § 158(d)(2)(A), however, is limited to certified "judgment[s], order[s], or decree[s]" of both "final" and "interlocutory" varieties. The question, then, is whether a report with proposed conclusions of law constitutes a judgment, order, or decree.

Though this is an issue of first impression for us, the Seventh Circuit has already addressed whether circuit courts have jurisdiction under § 158(d)(2)(A) to hear a direct appeal from the bankruptcy court of an unauthorized order that has

16

not been initially reviewed by the district court. In the underlying proceedings of *In re Ortiz*, 665 F.3d 906, 910 (7th Cir. 2011), the bankruptcy court dismissed certain claims, and the parties moved for and received certification for a direct appeal under § 158(d)(2). Without much explanation, the Seventh Circuit held that an unauthorized order from the bankruptcy court dismissing a complaint is not a final or interlocutory judgment, order, or decree under § 158(d)(2)(A). *See id.* at 915. As a result, circuit appellate jurisdiction did not exist. *See id. See also Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 777 (7th Cir. 2013) (explaining that *Ortiz*—"due to the unique posture of that appeal, namely, [that] we had permitted the parties to bypass the district court and bring a direct appeal from bankruptcy court"—held that "the bankruptcy court's lack of [ ] authority to enter final judgment on the debtors' claims deprived us of appellate jurisdiction"), *rev'd on other grounds*, 135 S. Ct. 1932 (2015).

A plain reading of the words "judgment, order, or decree" in § 158(d)(2)(A) supports the Seventh Circuit's holding in *Ortiz*. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (noting that statutory construction begins "with the language of the statute itself"). In the legal sense, these three words share, as their common denominator, the notion of a decision carrying some kind of command or adjudicative consequence. *See* Black's Law Dictionary 497, 970, 1270 (10th ed. 2014); 1 Shorter Oxford English Dictionary 619, 1466 (5th ed.

17

2002); 2 Shorter Oxford English Dictionary 2016 (5th ed. 2002). Proposed findings of fact and/or conclusions of law are a creature of § 157, though, and do not, in and of themselves, constitute a judicial decision with legal effect. As we have explained, § 157 makes it clear that bankruptcy courts' ability to fully "hear and determine" cases does *not* extend to non-core proceedings. *See* § 157(a), (c)(1). Absent consent, in such proceedings only the district court is vested with adjudicatory authority. *See* § 157(c)(1). Thus, we hold that the phrase "judgment[s], order[s], or decree[s]" in § 158(d)(2)(A) does not include nonbinding, proposed findings of fact and/or conclusions of law.

We agree with the Seventh Circuit that § 158(d)(2)(A) does not give us jurisdiction to consider, on a direct certified appeal, the merits of an unauthorized bankruptcy court order entered without consent in a related non-core proceeding unless it has first been reviewed by the district court as a report with proposed findings of fact and/or conclusions of law under § 157(c)(1). We therefore cannot proceed to the merits.

## V

The bankruptcy court had authority to entertain the action filed by the Wortley parties pursuant to its "related to" non-core jurisdiction. It did not, however, have statutory authority—absent consent—to enter a dismissal order in this non-core proceeding. The bankruptcy court should have submitted a report

18

with proposed conclusions of law recommending dismissal of the complaint to the district court. Because the case should have gone there first, we transfer the unauthorized order to the district court for review as a report with proposed conclusions of law under § 157(c)(1). *See* 28 U.S.C. § 1631. *See also In re Gen. Coffee Corp.*, 758 F.2d 1406, 1409 (11th Cir. 1985) (transferring direct bankruptcy court appeal to district court for want of appellate jurisdiction).

**BANKRUPTCY COURT'S ORDER MODIFIED AND TRANSFERRED TO THE DISTRICT COURT.**