[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

Nos. 21-12969; 21-12971; 21-13231

_____

In re: ELLINGSWORTH RESIDENTIAL COMMUNITY
ASSOCIATION, INC.,

Debtor.

_____

ALICE GUAN,

Plaintiff-Appellant,

*versus*

ELLINGSWORTH RESIDENTIAL COMMUNITY
ASSOCIATION, INC.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket Nos. 6:20-cv-01938-WWB; 6:20-cv-01939-WWB;
6:20-cv-01940-WWB,
Bkcy No. 6:20-bk-01346-KSL

..._____

Before BRANCH, LUCK, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

These consolidated appeals began as a dispute between Alice Guan and her homeowners association ("HOA")—Ellingsworth Residential Community Association, Inc. After Guan failed to conform her yard to the HOA's covenants, Ellingsworth sued Guan in state court.[1] Guan countersued Ellingsworth for various state-law claims. The state court awarded Guan costs and fees because Ellingsworth had waived its claims against Guan by suing rather than arbitrating the dispute. But before Guan could collect and proceed with her counterclaims, Ellingsworth petitioned for subchapter V bankruptcy.

---

[1] Meritage Homes originally built and controlled Guan's subdivision. Meritage launched the suit against Guan and later transferred the HOA to Ellingsworth. Because Meritage is not involved in these appeals, and for simplicity, we refer only to Ellingsworth.

Guan appeared in the bankruptcy action and filed several motions. The Bankruptcy Court ruled on those motions, and Guan appealed to the District Court. Guan now appeals the District Court's orders (1) affirming the Bankruptcy Court's confirmation of Ellingsworth's reorganization plan, (2) affirming the Bankruptcy Court's denial of Guan's motion for relief from Ellingsworth's automatic stay, and (3) dismissing Guan's appeal from the Bankruptcy Court's denial of her motion to abstain.

After careful review, and with the benefit of oral argument, we affirm the two orders affirming the confirmation of the reorganization plan and affirming the denial of Guan's motion for relief from the stay. But we vacate the District Court's order dismissing Guan's appeal from the denial of her motion to abstain and remand that to the District Court.

## I.    Background

Given the intricacies of this litigation, we find it necessary to chronicle its background. We start with the proceedings in the Bankruptcy Court and detail Guan's proof of claims, the § 341 meeting of creditors, and the Bankruptcy Court's orders. We then explain the three District Court orders which Guan now appeals.

### A. Bankruptcy Court Proceedings

On March 3, 2020, following its state court suit against Guan, Ellingsworth voluntarily petitioned for chapter 11 bankruptcy. Ellingsworth elected to proceed under subchapter V. It acknowledged that Guan had an unsecured claim for $500,000

relating to "Attorney's Fees and Costs, Counterclaim" and that the claim was "Contingent[,] Unliquidated[, and] Disputed."

Ellingsworth stated it was a Florida not-for-profit corporation operating as an HOA for three subdivisions. As to why it filed for bankruptcy, Ellingsworth claimed that:

(1) Guan had sought $500,000 in attorneys' fees and costs, and an undisclosed amount of damages in her state court counterclaim;

(2) its legal fees defending against Guan's counterclaim were unpaid; and

(3) it had unpaid repair and maintenance costs for the subdivisions.

### 1. Proof of Claims

In May 2020, Guan appeared in the bankruptcy action with counsel and filed two proofs of claims, which she later amended pro se. In Claim 4-3, Guan sought $500,000 for attorneys' fees and costs from Ellingsworth's suit against her. Guan asserted that the state court held she was entitled to the attorneys' fees and costs that she incurred while defending the suit. She also noted that the state court had scheduled a trial for April 27, 2020, to determine the amount of fees. But the state court stayed the trial after Ellingsworth filed a suggestion of bankruptcy.

In Claim 5-2,[2] Guan sought $1,600,000 for "Counterclaim/Modification of Such." In response to Ellingsworth's HOA

---

[2] Guan amended Claim 5-2 to Claim 5-3 without any noticeable change and without any other supporting documentation.

suit, Guan asserted six state-law counterclaims.[3] Though the true extent of her damages was unknown, Guan alleged an estimate of $1,600,000—a figure that also included the $500,000 in attorneys' fees and costs. According to Guan, discovery had begun on her counterclaims, and the counterclaims remained pending in state court.

### 2. Section 341 Meeting of Creditors

In April 2020, the United States Trustee held a meeting of Ellingsworth's creditors as required by 11 U.S.C. § 341. Ellingsworth's president, Mike Panko, testified that Ellingsworth was run by volunteers and had no paid employees. He also testified that in late 2019, Ellingsworth realized that it lacked sufficient funds to operate and decided to file for bankruptcy. After it passed a $25,000 special assessment to fund the bankruptcy process, Ellingsworth retained counsel to file for bankruptcy.

Panko noted that Ellingsworth's largest debt was unpaid legal expenses—mostly attributable to the Guan litigation. Despite passing a $100,000 special assessment to fund that litigation, some

---

[3] Guan's counterclaims asserted: (1) "abuse of process"; (2) Florida RICO; (3) intentional infliction of emotional distress; (4) negligence; (5) breach of contract; and (6) "Declaratory Judgment on Association Authority and on Arbitration Requirement[s] per Contract that was Entered by Both Guan and Association." Guan later acknowledged that her declaratory relief claim was dismissed in state court, and she withdrew the negligence and breach of contract claims.

homeowners did not pay. And Ellingsworth determined that it would no longer be able to pay its lawyers.

Apart from its legal bills, Ellingsworth could no longer afford road repairs in its subdivisions. When asked whether Ellingsworth considered a special assessment to cover these repairs, Panko said that it had not. Panko explained that even if an assessment were feasible, it still would not have solved other debts in Ellingsworth's budget. Panko added that, at the time of the § 341 meeting, Ellingsworth could not pass a special assessment because about 25% of its homeowners were behind on dues or past assessments.

### 3. Subchapter V Eligibility Order

After the § 341 meeting, Ellingsworth submitted its subchapter V reorganization plan and objected to Guan's claims. The plan provided that a creditor's trust would be created and funded with:

(1) 25% of its accounts receivable more than ninety days past due;

(2) the "net proceeds recovered from all Causes of Action after payment of professional fees and costs associated with such collection efforts as determined by the Creditor Trust Trustee"; and

(3) Ellingsworth's projected disposable income.

Guan, now pro se, objected to Ellingsworth's subchapter V election. Pointing to language in 11 U.S.C. §§ 303(a) and 1112(c), Guan argued that Ellingsworth was ineligible for subchapter V because it was "not a moneyed, business, or commercial corporation," in contravention of the statutory requirements. She also

argued that Ellingsworth's debt was a personal expense and therefore consumer debt—not business debt.

The Bankruptcy Court overruled Guan's objections. It found that Ellingsworth was eligible for subchapter V because it engaged in commercial or business activities and fit the definition of a subchapter V debtor. It reasoned that any corporation engaged in commercial or business activities was eligible to proceed as a small business debtor, even if it engaged in those activities without a profit motive. And it found that Guan's reference to "moneyed, commercial, or business corporations" in 11 U.S.C. §§ 303 and 1112 was "like comparing apples to oranges." Per the Bankruptcy Court, those statutes define types of corporations rather than activities conducted by corporations.

The Bankruptcy Court also determined that Ellingsworth's debt was business debt. The Court noted that under § 101(8), consumer debt included "debt incurred by an individual primarily for personal, family, or household purpose." And, based on that definition, any other activities outside of this must be commercial or business activities It then detailed Ellingsworth's business and commercial activities, including contracting for goods and services, hiring professionals, overseeing maintenance, filing tax returns with business income, registering as a Florida corporation with a board of directors, and collecting regular and special assessments from homeowners.

### 4. Confirmation Order

A few days later, Guan objected to Ellingsworth's reorganization plan. She argued that the plan failed to disclose a liquidation analysis, lacked projections on its ability to pay debts after reorganization, and that Ellingsworth and the homeowners were the same entity because the homeowners authorized the funding for Ellingsworth's conduct. Guan also argued that the plan was not proposed in good faith because it would not generate enough money to pay Ellingsworth's creditors. She added that the plan did not explain whether special assessments would be passed to pay Ellingsworth's debt to her and that the plan did not provide the homeowners' personal financial information and ability to pay.

The U.S. Trustee and subchapter V Trustee objected to the plan as well. After the Bankruptcy Court heard argument on Ellingsworth's plan and the objections, Ellingsworth submitted a final reorganization plan.[4] The plan stated that a creditors' trust would be created from which unsecured creditors would receive payment of their allowed claims over a term of three years. The trust would be funded with:

(1) 25% of all accounts receivable more than ninety days past due;

(2) net proceeds received from all causes of action; and

(3) net disposable income for three years.

---

[4] Ellingsworth's final reorganization plan incorporated two previous modifications that were filed shortly before the hearing.

The plan also noted that Ellingsworth would "follow all applicable procedures under its declarations to bring a $300,000.00 special assessment to a vote." If approved, the assessment would provide $300,000 in quarterly payments over five years.

In September 2020, the Bankruptcy Court held a hearing on the final plan. Ellingsworth's counsel testified that he worked with the U.S. Trustee and subchapter V Trustee on the final plan. He explained that, under the final plan, distribution would begin only after all disputed claims were finalized. Panko testified that, regarding the viability of the $300,000 special assessment, the homeowners seemed eager to end the multiple-year litigation.

The next month, the Bankruptcy Court confirmed the reorganization plan. It found that the plan was fair and equitable under 11 U.S.C. § 1191 because:

(1) Ellingsworth would devote more than its projected disposable income by agreeing to a $300,000 special assessment;

(2) there was a high likelihood that Ellingsworth would make payments under the plan; and

(3) the plan provided appropriate remedies if Ellingsworth did not make payments.

According to the Court, the plan maximized payments to creditors while allowing Ellingsworth to pay its ongoing expenses. So the plan was "in the best interests of all creditors, including Guan." And the Court clarified that there would be no distribution to a class of claimants until all claims within that class were final.

In turn, the Bankruptcy Court overruled Guan's objections to the plan. The Court determined that, liberally construed, Guan presented three issues:

(1) the plan did not contain sufficient financial information;

(2) Guan was entitled to homeowners' personal financial information; and

(3) the plan was not feasible because the homeowners had not approved the $300,000 special assessment.

As to Guan's first objection, the Bankruptcy Court found that the plan satisfied 11 U.S.C. § 1190's disclosure requirements.

Guan's second objection had no merit. The Court reasoned that Guan was not entitled to the homeowners' personal financial information because Ellingsworth was a corporation and Guan did not demonstrate that the corporate veil should be pierced.

For the third objection, the Court concluded that it was reasonably likely that the $300,000 special assessment would be passed by the homeowners because Panko testified that he had the votes to pass it and that other large special assessments had been approved in the past. And if the special assessment was not passed by February 25, 2021—the date of the post-confirmation status conference—the Court would find Ellingsworth in breach of the plan under the plan's default provision.

Guan promptly appealed the Bankruptcy Court's Confirmation Order.

### 5. Stay Order

When Guan objected to the reorganization plan, she also moved for relief from the automatic stay. She argued that Ellingsworth's state court complaint and her state court counterclaims were "non-core proceedings" that needed to be adjudicated by the state court before the Bankruptcy Court could approve Ellingsworth's plan.

Guan also emphasized that stay relief was warranted because Ellingsworth filed for bankruptcy in bad faith. As proof, she pointed to Ellingsworth's admission at the § 341 creditor's meeting that it filed for bankruptcy to avoid a final judgment from the state court awarding her attorneys' fees and costs. She also noted that Ellingsworth incorrectly reported its revenue for 2018 and 2019 and took two months to correct its error.

Guan also argued that it was more efficient to litigate in state court because the state court was more familiar with the case and the state law issues. She pressed that the Bankruptcy Court lacked jurisdiction to adjudicate those state law issues. Guan also argued that because she requested a jury trial, the state law issues needed to be tried in a district court or a state court. Finally, Guan argued that Ellingsworth's reorganization plan lacked adequate protection for her, and that Ellingsworth did not offer to make payments to protect her claims.

After a hearing, the Bankruptcy Court denied Guan's motion for relief from the stay. It found that Guan did not meet her initial burden of showing that cause for stay relief existed. The interest in judicial economy weighed against relief from the

automatic stay because the Court was familiar with the facts of the case, discovery on the claims had begun, there was a discovery deadline, and a trial on the claims had been scheduled for February 2021. On the other hand, the state court had no trial date set, it likely could not schedule a trial before February 2021, and Guan's counterclaims had been in the early stages of discovery in the state court before the automatic stay.

The Court also found that Guan voluntarily submitted her claims to the Bankruptcy Court. If the claims were litigated in state court, the harm to Ellingsworth and other creditors outweighed any harm to Guan because resolution of the claims was essential to Ellingsworth's performance of the plan. And other unsecured creditors would be "held hostage by Guan's continued litigation."

The Court found that Guan's non-core argument was meritless. The resolution of Guan's claims was a core proceeding because the claims were at the heart of the administration of the bankruptcy. The Court found that Guan had consented to the Court's jurisdiction when she voluntarily filed her claims and motions.

Finally, the Court determined that Ellingsworth had not acted in bad faith because Ellingsworth quickly amended its financial disclosures and its reorganization plan.

A few days later, Guan appealed the Bankruptcy Court's order denying her relief from the automatic stay.

### 6. Abstention Order

In August 2020, Guan moved the Bankruptcy Court under 28 U.S.C. § 1334(c)(2) to abstain from ruling on any state law issues underlying her claims. Guan repeated many arguments from her stay relief motion, and she added that abstention was in the interests of justice and comity. Citing its "broad discretion," the Bankruptcy Court denied Guan's abstention motion for the same reasons it discussed in its Stay Order.

As with the Bankruptcy Court's previous orders, Guan appealed the Abstention Order.

### 7. Post-Appeal Bankruptcy Court Proceedings

In December 2020, Guan told the Bankruptcy Court that Ellingsworth's homeowners passed the $300,000 special assessment. Two months later, the Bankruptcy Court held a trial on Ellingsworth's objections to the claims. The Court later partially allowed the claim for attorneys' fees and costs in the amount of $377,496.60 for the amount Guan paid her attorneys while defending against Ellingsworth's claim in state court. But the Court sustained Ellingsworth's objections to Guan's counterclaims and disallowed the claim.[5]

*B. District Court Proceedings*

---

[5] The District Court affirmed the Bankruptcy Court's Claims Order. Guan's appeal of that order is stayed pending resolution of this appeal.

That brings us to the District Court proceedings, including Guan's appeal from the (1) Confirmation Order, (2) Stay Order, and (3) Abstention Order.

### 1. Confirmation Order Appeal

In her appeal of the Confirmation Order, Guan reiterated the same arguments that she made to the Bankruptcy Court. But she added that the plan did not comply with various requirements in 11 U.S.C. §§ 1190 and 1191. For example, Guan asserted that the plan's "Brief History" section was untruthful because it omitted Ellingsworth's history of passing special assessments. Several of Guan's arguments were made only in the subheadings in her brief, lacking any substantive discussion.

The District Court affirmed the Confirmation Order. It first found that the Guan had only properly made one argument on appeal: the plan did not provide a truthful history of Ellingsworth's business operations. The District Court concluded that this argument failed because the Bankruptcy Code did not require the specific information Guan wanted. The Court found that Guan had waived her other arguments because she raised them "in a perfunctory and conclusory manner without citation to the record or legal authority." The District Court noted that it had rejected, in a previous appeal, Guan's argument that Ellingsworth could not proceed under subchapter V. Therefore, that argument was not properly before the Court.

Guan appeals this order.

## 2. Stay Order Appeal

Guan's appeal of the Stay Order also rehashed many arguments she made to the Bankruptcy Court. She added that relief from the stay was warranted because Guan would have an interest in the homeowners' homes if the homeowners did not pay the $300,000 special assessment and Ellingsworth sought liens against their homes.

In response, Ellingsworth reiterated the same arguments it made in opposition to Guan before the Bankruptcy Court. It stressed that Guan did not meet her burden to show why relief from the automatic stay was warranted. And Ellingsworth stressed that Guan had consented to the Bankruptcy Court's jurisdiction by filing her claims.

The District Court affirmed the Stay Order. It found that the Bankruptcy Court did not abuse its discretion by denying relief from the automatic stay. The District Court reasoned that the Bankruptcy Court applied the correct legal standard and that Guan did not show that it made a clear error in judgment or a clearly erroneous factual finding. As to Guan's jurisdictional argument, the Court first explained that Guan's arguments were not relevant to lifting the stay. In any case, the Court determined that Guan consented to the Bankruptcy Court's jurisdiction because she voluntarily filed proofs of claims. It also concluded that its jurisdiction extended to the determination of Guan's state court counterclaims because the counterclaims necessarily would be resolved in the claims allowance process.

The District Court rejected Guan's adequate-protection argument. The Court reasoned that although Ellingsworth might have lien rights against homeowners who fail to pay special assessments, she did not show that she was entitled to any right or interest in the homeowners' properties.

Next, the District Court found that the Bankruptcy Court did not clearly err by finding that Ellingsworth did not act in bad faith. Guan did not provide evidence establishing that Ellingsworth's financial disclosures were untimely or improperly amended or that it intentionally sought to avoid making payments on the claims.

Finally, the District Court found that the Bankruptcy Court did not clearly err by finding that it could resolve the claims more efficiently than the state court. Despite her disagreement with the Bankruptcy Court's balancing of the equities, Guan did not show that the Bankruptcy Court made a clearly erroneous finding of fact.

Guan appeals this order.

### 3. Abstention Order Appeal

In her appeal of the Bankruptcy Court's Abstention Order, Guan argued that the order was a final appealable order because the Bankruptcy Court determined that she was not entitled to the relief she sought. According to Guan, the order was "a procedural unit separate from the remaining case." Ellingsworth, without

addressing finality, responded that the Abstention Order should be affirmed.

The District Court dismissed Guan's appeal on the Abstention Order for lack of jurisdiction. The District Court explained that the Abstention Order was not a final order appealable as of right because the order determined only where the merits of Guan's claims would be heard; it did not resolve those claims or declare the proper relief. The Court also noted that Guan failed to seek leave to appeal from the interlocutory Abstention Order under Fed. R. Bankr. P. 8004(a)(2) or 28 U.S.C. § 158(a)(3). Like the District Court's other orders, Guan appeals.

## II.    Discussion

We now turn to the issues in this appeal. First, we address Guan's pending motions. Second, we review the subchapter V Eligibility and Confirmation Orders. Third, we examine the Bankruptcy Court's Stay Order, including whether the court had subject-matter jurisdiction to rule on the state-law issues underpinning Guan's proof of claims. Finally, we evaluate the Abstention Order.

### A. Motions to Supplement the Record

Before tackling the merits of Guan's appeals, some house-keeping is needed. After filing her appeals, Guan filed several motions, which we construe as motions to supplement the record. In each, she asks us to consider new evidence and documents that were submitted to the Bankruptcy Court after her appeal. These include a partial transcript from a May 24, 2022, hearing where

18                    Opinion of the Court                    21-12969

Ellingsworth's counsel admitted that Ellingsworth was responsible for any debts and expenses in the bankruptcy case.

"A primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000). The problem for Guan is that her motions lack any argument that the supplemental evidence would satisfy this factor.

True, we liberally construe pro se filings. *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). But that does not give us "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). By making her arguments in a perfunctory manner without authority or support, Guan has waived the right to have the Court consider her arguments. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). We therefore deny Guan's motions to supplement the record. All other pending motions are denied as moot. [6]

_____

[6] These include Guan's "Notice and Motion to Correct 1 Word and Modify Content Filed in Motion and MOTION2 to File Documents Because Alice Guan Objects to This Court Appointed Counsel to Represent Her Position"; "MOTION2 to File Documents to Show Judges Denied Alice Guan's Motions to Stay Plan Confirmation Proceedings and Any Following on Implementation And There Were Pending Appeals of Orders Denying Motions Objecting

### B. Subchapter V Eligibility and Confirmation Orders[7]

#### 1. Subchapter V Status

Guan argues that Ellingsworth is not eligible as a subchapter V debtor because it lacked a profit motive. We disagree.

Subchapter V was added to chapter 11 of the Bankruptcy Code in 2019 as part of the Small Business Reorganization Act. Among other things, subchapter V removes many of the complex requirements that made bankruptcy unapproachable for small businesses. It modifies the absolute priority rule,[8] shortens the

---

to Subchapter V And Plans Were Objected to in the Main Case and In Adv Proceedings Later Complaint Was Filed to Revoke the Confirmed Plan"; "Motion to File Supplemental Appendix of Documents to Show Alice Guan Filed Motions to Stay Plan Implementation then Debtor Filed Notice of Members Voted $300,000 Special Assessment Then Judge Jennemann Denied Both Motions in 2 Separate Orders and to File Pages from and Complete Contents of Alice Guan's Corrected Initial and Reply Briefs Filed in Case 21-12969 Describing that Alice Guan Did File Motion to Stay"; "Motion to Pause Oral Argument if Zoom Connection to the Court is Interrupted by Any Reason"; Motion to object to this Court's September 19 2023 Order"; and multiple motions "to Deem No Position Change after 20 months of Court Pending time."

[7] Guan's challenge to the Bankruptcy Court's non-final order determining Ellingsworth's subchapter V eligibility is properly before us because that interlocutory order merged into her appeal from the Bankruptcy Court's final order confirming the reorganization plan.

[8] Typically, if all creditors do not accept the plan, the absolute priority rule requires that the reorganization plan pay senior creditors in full before junior credits can receive any distribution. In a regular chapter 11 case, this wipes out the debtor's equity stake. But under subchapter V, a debtor can pay all

length of the bankruptcy process, and lowers the costs associated with bankruptcy.

To qualify for subchapter V, the debtor must be "engaged in commercial or business activities" and have "aggregate noncontingent liquidated secured and unsecured debts" as of the date of petition of no more than a statutorily defined limit,[9] "excluding debts owed to . . . affiliates or insiders," most of which must arise "from the commercial or business activities of the debtor." 11 U.S.C. § 101(51D) (defining a "small business debtor"); *see also* 11 U.S.C.

---

projected disposable income received within the first three to five years under the plan and retain an equity stake. 11 U.S.C. § 1191(d), (c)(1), (2).

[9] Subchapter V's debt limit has fluctuated in its early years. Congress first set the debt limit at $2,726,625. *See* Small Business Reorganization Act of 2019, Pub. L. No. 116-54, § 1191(d) 133 Stat. 1079, 1079 (2019); *see also* 11 U.S.C. § 101(51D) (2019). Thirty-six days later, Congress temporarily increased it to $7.5 million under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Pub. L. No. 116-136, § 1113(1)(A), 134 Stat. 281, 310 (2020). That limit was set to expire in one year, but the Bankruptcy Relief Extension Act extended it for a second year. Pub. L. No. 117-5, § 2, 135 Stat. 249, 249 (2021). The $7.5 million debt limit expired on March 27, 2022, and the limit reverted to $2,725,625. Five days later, the debt limit increased to $3,024,725 under § 104's routine inflation adjustments. *See* 11 U.S.C. § 104. Then, the Bankruptcy Threshold Adjustment and Technical Corrections Act reimposed the $7.5 million debt limit for two more years, and retroactively applied to cases filed on or after March 27, 2020. Pub. L. No. 117-151, § 2(d)(1), 136 Stat. 1298, 1298–99 (2022). That debt limit has expired as of June 2024 and the debt limit has now reverted to $3,024,725. *See* 11 U.S.C. § 101(51D). Ellingsworth's bankruptcy was filed in the initial thirty-six days of subchapter V when the debt limit was $2,726,625.

§ 1182(1) (limiting eligibility to file a subchapter V case to debtors meeting the definition of a "small business debtor").

Guan argues that Ellingsworth was not "engaged in commercial or business activities." The Bankruptcy Code does not define the phrase, and we have never addressed whether a not-for-profit company is eligible for subchapter V. We now hold that a not-for-profit company can be "engaged in commercial or business activities" as that phrase is used in the Code.

As with all statutes, we start with the text. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 950 (2002). The broad eligibility of 11 U.S.C. § 101(51D) does not limit subchapter V to for-profit entities. Instead, the statute allows any entity involved in regular business-like functions—no matter if its primary goal is to earn a profit—to qualify for reorganization under subchapter V. "[B]usiness activities" can be either "the carrying out of a series of similar acts for the purpose of realizing a pecuniary benefit, or otherwise accomplishing a goal." *Doing Business*, *Black's Law Dictionary* (11th ed. 2019). The Bankruptcy Appellate Panel of the Ninth Circuit has reached a similar conclusion and highlighted that "churches, hospitals, and other nonprofit businesses are allowed to file for chapter 11 (or 7) relief." *In re RS Air, LLC*, 638 B.R. 403, 412 (B.A.P. 9th Cir. 2022). Because subchapter V is within chapter 11, it would be insensible to consider nonprofit entities capable of petitioning for chapter 11 relief but not for relief under a subchapter of chapter 11.

HOAs, in other words, engage in "business activities" as a matter of course. To be sure, Florida law categorizes HOAs as not-for-profit corporations. Fla. Stat. § 720.302. But that status does not preclude them from engaging in business-like operations. To the contrary, HOAs can collect assessments, manage budgets, enforce rules, and maintain common areas. *Id.* § 720.303. In practice, an HOA operates much like a small business—overseeing the maintenance of shared properties, contracting with service providers, and negotiating with third parties on behalf of its members.[10]

And a "nonprofit corporation, like a for-profit corporation, is eligible to file for relief under the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 109.02 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2024). Congress did not include not-for-profit companies alongside the list of other excluded debtors in the statute,[11] and no evidence suggests that it desired to. Indeed, "where Congress knows how to say something but chooses not to, its silence is controlling." *Delgado v. U.S. Atty. Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) (citation and internal quotation marks omitted).

---

[10] For the same reason, we summarily reject Guan's arguments that Ellingsworth's debts were not "business debts" under the Code.

[11] Subchapter V is ineligible to any debtor that has debts greater than the debt limit; "any debtor that is a corporation subject to the reporting requirements under section 13 or 15(d) of the Securities and Exchange Act of 1934 (15 U.S.C. 78m, 78o(d))"; or any debtor "whose primary activity is the business of owning single asset real estate." 11 U.S.C. § 101(51D)(A), (B).

In the end, Ellingsworth was "engaged in commercial or business activities," so it was properly classified as a subchapter V debtor. Subchapter V contains no textual requirement that a debtor pursue a profit, and we refuse to impose such a requirement here.

Consequently, we affirm the order affirming Ellingsworth's designation as a subchapter V debtor.

## 2. Reorganization Plan

Guan also argues that the Bankruptcy Court should not have confirmed Ellingsworth's reorganization plan. We disagree.

For starters, a subchapter V plan must include a brief history of the debtor's business operations, a liquidation analysis, and projections of the debtor's ability to make payments. 11 U.S.C. § 1190(1).

If a debtor has all of these, but a creditor objects to the plan, the court can approve the plan as a nonconsensual or "cramdown" plan. *See id.* § 1191(b). But the plan must still have been proposed in good faith. We have interpreted "good faith" to require "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1082 (11th Cir. 2015), *abrogated on other grounds by Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 219 L. Ed. 2d 721 (2024).

Once a plan is proposed in good faith, a court must approve the plan if it is "fair and equitable" to impaired classes and meets the requirements of § 1129(a). 11 U.S.C. § 1191(b). A plan is "fair

and equitable" if it projects all disposable income[12] received within the first three to five years of the plan as payments under the plan, there is a reasonable likelihood the debtor can make all plan payments, and the plan provides appropriate remedies to protect claimholders if payments are not made.[13] *Id.* § 1191(c).

Ellingsworth's plan contains everything required by the Code—a brief history of operations, a liquidation analysis, and projections of its ability to pay. The Bankruptcy Court also found that the plan is "fair and equitable," and that Ellingsworth's default provision provided appropriate safeguards if payments were not made. And the Court found that Ellingsworth did not propose the plan in bad faith because Ellingsworth disclosed everything it was required to under the Code. Guan has pointed to nothing to support that the Bankruptcy Court's conclusions are clearly erroneous. We affirm the plan's confirmation.

## C. Stay Order

Guan also argues that the Court abused its discretion in denying her relief from Ellingsworth's stay. That is not so.

---

[12] Disposable income in subchapter V is the income the debtor receives that is not reasonably necessary to be spent on maintenance or support of the debtor or on payments needed for the "continuation, preservation, or operation" of the debtor's business. 11 U.S.C. § 1191(d).

[13] Alternatively, the debtor can distribute property under the plan (in the first three to five years) that is of a value that equates to at least the projected disposable income of the debtor. 11 U.S.C. § 1191(c)(2)(B). That does not apply here.

When a debtor files a bankruptcy petition under chapter 11, the bankruptcy court imposes an automatic stay that stops any collection of the debtor's pre-petition debts outside the bankruptcy proceeding. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 42, 140 S. Ct. 582, 589 (2020); *see* 11 U.S.C. § 362(a)(1) (describing the scope of the automatic stay). The automatic stay bars, among other things, the continuation of lawsuits seeking a recovery from the debtor. *Ritzen Grp., Inc.*, 589 U.S. at 42, 140 S. Ct. at 589.

But a bankruptcy court may grant relief from the stay "[o]n request of a party in interest and after notice and a hearing . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Courts look to several factors to determine whether to grant stay relief, including whether the debtor has acted in bad faith; the hardships imposed on the parties considering the overall goals of the Bankruptcy Code; and pending state court proceedings. *In re Feingold*, 730 F.3d 1268, 1276–77 (11th Cir. 2013) (recognizing that, absent extraordinary circumstances, an unsecured creditor is generally not entitled to relief from an automatic stay). Courts also consider the totality of the circumstances when determining whether to grant relief from a stay, including "the benefits and burdens of lifting the stay." *In re Gaime*, 17 F.4th 1349, 1355 (11th Cir. 2021).

We review a bankruptcy court's denial of relief from the automatic stay for abuse of discretion. *In re Feingold*, 730 F.3d at 1272 n.2. A bankruptcy court abuses its discretion when it misapplies the

law or bases its decision on clearly erroneous findings of fact. *In re Daughtrey*, 896 F.3d 1255, 1274 (11th Cir. 2018).

Guan offers multiple arguments that the Bankruptcy Court abused its discretion by denying relief from the automatic stay. We address each in turn and conclude that the Court did not abuse its discretion.

First, Guan argues that she showed cause sufficient to justify a relief from the stay. The Bankruptcy Court disagreed. Contrary to Guan's position, the Court said it was already familiar with the facts of Guan's counterclaims and it could have a trial on the merits before a state court could. Therefore, the balance of equities weighed in favor of not granting relief from the stay. Bankruptcy courts retain broad discretion to make such determinations, and none of the facts it relied on here were clearly erroneous. The Bankruptcy Court did not abuse its discretion in finding that Guan did not show cause.

Next, Guan argues that the Bankruptcy Court and District Court conceded her arguments by not addressing them. But that is not how the adversarial system works. An argument's merit—or lack thereof—underpins whether a failure to address it constitutes a concession. We do not require courts to address every argument which a litigant raises. Rather, we have stressed that the orders of lower courts require sufficient explanation to provide an opportunity for meaningful appellate review. *See Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007). When a litigant raises nondispositive, irrelevant, or frivolous issues, it would unnecessarily burden the

court system to require every issue to be addressed. And to require a court to address meaningless issues would not accord with our purpose of providing meaningful appellate review. Rather, requiring courts to address nondispositive issues would produce a cavalcade of dicta and strain judicial administration without providing any benefit to the litigants.

Of course, this is not to say that a court cannot abuse its discretion or otherwise err in failing to address meritorious arguments. The role of appellate courts is to make such determinations. But "[a] decisionmaker does not necessarily err simply because he or she does not address every argument raised by one of the parties." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 605 (6th Cir. 2016). The mere failure, on its own, to address an issue raised by a litigant cannot sensibly be considered a concession of the issue by the court. The Court here did not abuse its discretion—nor did it concede the appeal—by not addressing every argument Guan made.[14]

Guan also argues that the Bankruptcy Court lacked jurisdiction over her claims and so should have granted her relief from the stay so that the claims can be adjudicated. Her position hinges on the idea that her state law counterclaims are non-core and beyond the reach of the Bankruptcy Court. But this overlooks the nature

---

[14] Given the lack of clarity in Guan's briefs, we likewise do not address every argument she makes. This does not concede that her arguments are meritorious.

of core and non-core proceedings and the effect of filing a proof of claim in bankruptcy.

In bankruptcy, core proceedings arise under the Code itself or are central to the claims-allowance process. *Wortley v. Bakst*, 844 F.3d 1313, 1318–19 (11th Cir. 2017). They encompass the court's role in administering the estate, liquidating assets, and determining the validity of claims. *Id.* Non-core proceedings, on the other hand, are peripheral. *Id.* at 1318. They arise under state law or involve issues that exist independent of the bankruptcy action. *Id.*; *In re Toledo*, 170 F.3d 1340, 1349 (11th Cir. 1999) ("[T]he dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core.").

By filing a proof of claim, Guan consented to the Court's equitable jurisdiction for all matters tied to the allowance or disallowance of her claim. And this makes sense—the Bankruptcy Court must have the power to settle all disputes relating to the claims-allowance process. Ellingsworth's bankruptcy, and the payment of all creditors (including Guan), hinge on the resolution of Guan's counterclaims—the very claims she voluntarily submitted through her proof of claim.

Guan's insistence on a jury trial does not change this outcome. The right to a jury trial may exist for purely state-law claims that stand apart from the claims process, but when those claims become intertwined with bankruptcy, the Bankruptcy Court can exercise full jurisdiction over those claims. In other words, Guan's counterclaims are no longer isolated state law matters provided

with the full panoply of trial protections, but would be integral to the resolution of her proof of claim. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59, 109 S. Ct. 2782, 2799 (1989). The Supreme Court has clarified that,

> in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods.

*Katchen v. Landy*, 382 U.S. 323, 337, 86 S. Ct. 467, 477 (1966) (quoting *Barton v. Barbour*, 104 U.S. 126, 133–34 (1881)).

The Bankruptcy Court did not err in denying Guan's motions for stay relief because the adjudication of her proofs of claim was a core proceeding over which the Court had jurisdiction. The state law issues would be resolved in that adjudication, meaning there was no Seventh Amendment right to a jury trial for those claims.

Guan makes several other arguments on appeal, including that her appeal divested the Bankruptcy Court of jurisdiction of the stay motions. Her arguments lack footing in law, so we reject them. The upshot is that Guan has not shown that the Bankruptcy Court abused its discretion in denying her relief from stay. So we affirm the District Court's order.

*E. Abstention Order*

Finally, Guan argues that the District Court erred in determining that it lacked jurisdiction over the Abstention Order appeal. Although we find Guan's specific arguments unpersuasive, we agree that the District Court erred.

A bankruptcy court is statutorily authorized to abstain either in its own discretion or because a mandatory ground exists. 28 U.S.C. § 1334(c)(1), (2); *Stern v. Marshall*, 564 U.S. 462, 502, 131 S. Ct. 2594, 2620 (2011) (indicating that § 1334(c) applies to bankruptcy courts). Under the discretionary abstention provision—§ 1334(c)(1)—a bankruptcy court may abstain from hearing a particular proceeding when doing so would be "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

By contrast, under the mandatory abstention provision—§ 1334(c)(2)—a bankruptcy court must abstain from a proceeding if:

(1) it is a non-core proceeding based on a state-law claim or cause of action;

(2) the claim or cause of action has no independent basis for federal jurisdiction other than § 1334; and

(3) an action has been commenced and can be timely adjudicated in state court.

*See* 28 U.S.C. § 1334(c)(2) (providing that mandatory abstention is unavailable for core proceedings); *see also Stern*, 564 U.S. at 476, 131

S. Ct. at 2604 (holding that core proceedings are "matters arising under Title 11 or in a Title 11 case").

Circuit court review of an abstention decision is available only where the bankruptcy court denies a request for mandatory abstention, not permissive abstention. 28 U.S.C. § 1334(d); *see also Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000). In Guan's "Emergency Motion to Ab[]stain From Complaint and Counter-claim," she cites to 28 U.S.C. § 1334(c)(2)—the mandatory absten-tion statute. So, Guan's motion is reviewable on appeal to both the District Court and us. The question that stumped the District Court is the timing of the appeal.

District Courts have appellate jurisdiction over bankruptcy courts' "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The District Court here found that the Abstention Or-der was not a "final judgment" as that term is used in the statute. But "[t]he ordinary understanding of 'final decision' is not attuned to the distinctive character of bankruptcy litigation. A bankruptcy case encompasses numerous individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt sta-tus of the debtor." *Ritzen Grp., Inc.*, 589 U.S. at 38, 140 S. Ct. at 586 (quotation marks omitted).

In *Ritzen*, the Supreme Court decided whether "a creditor's motion for relief from the automatic stay initiate[s] a distinct pro-ceeding terminating in a final, appealable order when the bank-ruptcy court rules dispositively on the motion." *Id.* at 37, 140 S. Ct. at 586. It unanimously answered "yes" and held "that the

adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case. That unit yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* at 37–38, 140 S. Ct. at 586.

Following the Court in *Ritzen*'s reasoning, once a bankruptcy court makes certain dispositive rulings on self-contained procedural matters—either granting or denying the motion—those matters are, in effect, finally resolved with respect to that proceeding. *Id.* This procedural segmentation recognizes that issues like stay relief often involve time-sensitive disputes, and postponing their resolution until the entire bankruptcy case concludes would undermine the efficient administration of justice. *Id.* Stay-relief motions determine a party's ability to litigate in its preferred forum. *Id.* at 46, 140 S. Ct. at 591. Denying that request locks the creditor into the bankruptcy case, while granting it opens the door to another venue.

In the end, "[s]ection 158(a) asks whether the order in question terminates a procedural unit separate from the remaining case, not whether the bankruptcy court has preclusively resolved a substantive issue. It does not matter whether the court rested its decision on a determination potentially pertinent to other disputes in the bankruptcy case, so long as the order conclusively resolved the movant's entitlement to the requested relief." *Id.* at 46, 140 S. Ct. at 591.

Applying this reasoning to mandatory abstention, an order conclusively denying mandatory abstention is immediately

appealable. Like stay-relief motions, orders denying mandatory abstention determine whether a party can pursue her claims in a forum outside of bankruptcy court. And when a court denies a request for mandatory abstention, it definitively closes off the possibility of litigating the claim in state court, forcing the party to remain within the bankruptcy system.

The "proceeding" at issue here is the adjudication of the motion for mandatory abstention. The Bankruptcy Court denied that motion. So there is nothing left for the Bankruptcy Court to do in that "proceeding" and the order is final. The District Court therefore erred when it found it lacked jurisdiction to review the Abstention Order because it was not an immediately appealable "final judgment."

We emphasize the limited nature of our decision. We take no position on the merits of Guan's abstention appeal, nor do we conclude that there are no other issues that would bar the District Court's review. That is for the District Court to decide. But *Ritzen* compels us to conclude that the District Court had jurisdiction over Guan's appeal of the Bankruptcy Court's order declining mandatory abstention. So we vacate the District Court's dismissal of Guan's abstention appeal and remand for the District Court to consider the merits.

## III.    Conclusion

Guan's protracted dispute with Ellingsworth brings several issues to our Court. We affirm the District Court's decisions upholding Ellingsworth's subchapter V designation, confirming its reorganization plan, and denying Guan relief from the automatic

34                    Opinion of the Court                    21-12969

stay. But we vacate the dismissal of Guan's abstention appeal and remand for further proceedings.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**